## COMMONWEALTH *vs.* JOSE MUNERA, JR.

No. 90-P-1201.

Middlesex. May 17, 1991. - September 20, 1991.

Present: ARMSTRONG, DREBEN, & GREENBERG, JJ.

*Constitutional Law*, Search and seizure, Probable cause. *Search and Seizure*, Affidavit, Probable cause, Forcible entry by police. *Probable Cause. Evidence*, Expert opinion. *Controlled Substances. Practice, Criminal*, Comment by prosecutor, Assistance of counsel.

The affidavit of a police officer in support of an application for a search warrant for two apartments at one address set forth sufficient facts to support the issuance of the warrant and, in addition, supported its issuance with a no-knock provision. [381-384]

In a criminal case, expert testimony with respect to the use of dollar bills by drug dealers to wrap "chunk" samples of cocaine was relevant to the issue of an intent to distribute and was properly admissible to aid the jury in understanding matters beyond their common expertise. [384-385]

At a criminal trial certain expert testimony with respect to narcotics "stash pads" and drug couriers' "low profiles" was admissible to rebut the defendant's trial strategy depicting the defendant's life-style as inconsistent with his participation in a lucrative narcotics distribution ring [385-386], and, in any event, the admission of the evidence, unobjected to at trial, created no risk of a miscarriage of justice in view of the Commonwealth's powerful case against the defendant [386-387].

At the trial of an indictment for trafficking in cocaine, the prosecutor's references to Columbian drug culture were not improper appeals to racial or ethic prejudice but rather were used to suggest the unique methods of the alleged trafficking organization. [387-388]

At a criminal trial, the prosecutor's misstatement of the evidence in his closing argument did not prejudice the defendant, inasmuch as the judge immediately gave a curative instruction and returned to the issue in an instruction in his final charge. [388]

At the trial of an indictment for trafficking in cocaine in a quantity in excess of 200 grams, defense counsel's tactical decision to concede the defendant's possession of a small quantity of cocaine found in the defendant's shirt pocket, in order to dissociate him from the larger quantity of cocaine found in the defendant's apartment, was not manifestly unreasonable. [388-389]

INDICTMENT found and returned in the Superior Court Department on July 14, 1988. .

A pretrial motion to suppress evidence was heard by *James D. McDaniel*, J., and the case was tried before him.

*Bruce R. Taub* for the defendant.

*Kevin J. Mahoney*, Assistant District Attorney, for the Commonwealth.

DREBEN, J. Pursuant to a search warrant, police forcibly entered apartment 4 at 151 Wood Street, Lowell, where in an oven broiler unit they found eleven bags of a substance which upon analysis was determined to be eighty-nine percent pure cocaine weighing 670.92 grams. They also found $900 in currency as well as numerous rent receipts and other indications that the apartment was rented and occupied by the defendant. In this appeal from his convictions of trafficking in cocaine in excess of 200 grams (G. L. c. 94C, § 32E) and possession of cocaine (G. L. c. 94C, § 34),[1] the defendant claims numerous errors. We affirm his conviction.

1. *Motion to suppress.* Contrary to the defendant's contention, the affidavit of Officer William Taylor, a narcotics officer in the Lowell police department, met the requirements of *Commonwealth* v. *Upton*, 394 Mass. 363 (1985),[2] and set forth sufficient facts for the issuance of a search warrant for apartments 4 and 10 at 151 Wood Street in Lowell and for its issuance with a no-knock provision. The affidavit alleged the following. On May 28, 1988, Carlos Serna of 151 Wood Street in Lowell was arrested when narcotics officers observed him in an alleged drug transaction with occupants of a vehicle bearing Maine license plates. A substantial sum of money ($22,400), as well as a substance believed to be mari-

---

[1]The conviction for possession was placed on file with the defendant's consent and is therefore not before us. *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1975).

[2]*Commonwealth* v. *Upton*, 394 Mass. at 374-376, incorporated the principles of *Spinelli* v. *United States*, 393 U.S. 410 (1969), and *Aguilar* v. *Texas*, 378 U.S. 108 (1964), which require an affidavit based on information from an unknown informant to satisfy, what have come to be known as "the basis of knowledge test" and the "veracity test" (that the informant was "credible" or his information "reliable"). See *Commonwealth* v. *Melendez*, 407 Mass. 53, 55-56 (1990).

huana, was found in the car. A similar substance was also found on Serna's person.

On June 23, 1988, Taylor learned from the Maine Bureau of Intergovernmental Drug Enforcement that an informant, alleged to be reliable and who feared physical harm, had informed the Bureau that a cocaine trafficking operation in Old Orchard, Maine received its cocaine from 151 Wood Street in Lowell and that on June 24, 1988 two people using a gray Ford van with Maine license plates would be going from Old Orchard to 151 Wood Street, apartment 10, to purchase cocaine from a Colombian named either Carlos or Augusto Serna. The informant had purchased cocaine from Carlos Serna or Augusto Serna at that apartment on five different occasions within the last two months. He claimed these persons used elaborate surveillance techniques to detect police, including people on bicycles to check unknown cars, and that he had seen a handgun in the possession of one of the suspects inside the apartment.

As a result of this information, Maine and Lowell police set up a joint surveillance operation. On June 24, 1988, they saw a Ford van with Maine plates parked in a lot on Wood Street and a passenger leave the van on foot and return to the van from the direction of 151 Wood Street. Officers followed the van and stopped it in Old Orchard. A search revealed a large quantity of white rock powder, subsequently determined to be cocaine. The passenger, Richard Littlefield of North Conway, New Hampshire, was placed under arrest and, after being advised of his Miranda rights, told the police that the cocaine found in the van had been purchased by him in Lowell at 151 Wood Street. Having rung the doorbell at apartment 10 and informed a Spanish man who answered that he needed five and one half ounces of cocaine, Littlefield was taken to apartment 4 in the same building. From a cabinet in the kitchen area he was given two bags of cocaine for which he paid $5,000. He also saw several similar bags in the cabinet.

One of the police officers watching the building on June 24, 1988 was approached by a Spanish male on a bicycle and

"checked out." Two minutes later the same male returned with a black Subaru, the type of car the Maine informant had described as used by Carlos Serna.

From a discussion with the building manager of 151 Wood Street, the police learned that Augusto Serna was the listed tenant for apartment 10 and that the defendant and Maria Perez were the listed tenants for apartment 4. On the rental application, the defendant had named Augusto Serna as a co-renter.

As in *Commonwealth* v. *Atchue*, 393 Mass 343, 346-348 (1984), *Commonwealth* v. *Harding*, 27 Mass. App. Ct. 430, 435-437 (1989), and *Commonwealth* v. *Rivera*, 29 Mass. App. Ct. 290, 293 (1990), the information came from a named participant in a crime, Littlefield, rather than from a "faceless informer." His purchase of the cocaine satisfied the basis of knowledge test. *Commonwealth* v. *Perez-Baez*, 410 Mass. 43, 45 (1991). His assertion of firsthand knowledge, coupled with the specificity of the facts that he furnished, lent credence to the belief that he personally saw criminal activity and warranted a finding of reliability. *Commonwealth* v. *Atchue*, 393 Mass. at 348. That his statement of participation in the cocaine transaction was against his penal interest at a time when he would have "a reasonable fear of prosecution" lent additional credibility to his information. *Commonwealth* v. *Melendez*, 407 Mass. 53, 56-57 (1990).

Further support for the warrant was provided by the unnamed Maine informant whose information, in large part, corroborated Littlefield's account. See *Commonwealth* v. *Nowells*, 390 Mass. 621, 627 (1983) (informants' detailed statements corroborating each other in significant, detailed respects can establish their veracity); *Commonwealth* v. *Parapar*, 404 Mass. 319, 323-324 (1989); *Commonwealth* v. *Ciaramitaro*, 26 Mass. App. Ct. 110, 115 (1988). Like Littlefield, the Maine informant admitted to having purchased cocaine at 151 Wood Street — on five occasions over the previous two months — from Carlos or Augusto Serna in apartment 10, and he also believed that the cocaine sellers kept the cocaine in a separate "stash" apartment in the same

building. He also provided other valuable information: he correctly predicted the June 24 purchase of cocaine by a person in a Ford van with Maine plates (Littlefield); he described the car that Carlos Serna drove; he knew of the surveillance that Carlos and Augusto Serna used to protect their operation; and he had recent information that there was a large supply of cocaine on hand.

Independent police corroboration of these two accounts, see *Commonwealth* v. *Cast*, 407 Mass. 891, 897-898 (1990), was also set forth in the affidavit. Augusto Serna was linked to both apartments, and police observed both the predicted drug purchase by occupants of the Ford registered in Maine and the surveillance techniques described by the Maine informant. The affidavit established probable cause for the issuance of the warrant.

There was also sufficient basis for the issuance of a no-knock warrant. The extensive surveillance undertaken by the persons selling drugs made destruction of the drugs more likely if the police were required to knock and announce their presence. See *Commonwealth* v. *Scalise*, 387 Mass. 413, 422-423 (1982). Moreover, the Maine informant had said that the suspects in apartment 10 had a gun, and the police could reasonably fear for their safety and the safety of others. *Commonwealth* v. *Cundriff*, 382 Mass. 137, 147-148 (1980), cert. denied, 451 U.S. 973 (1981).

2. *Expert testimony on drug trafficking.* Relying on *Commonwealth* v. *Day*, 409 Mass 719, 723 (1991), the defendant claims that expert testimony concerning the operation of drug dealers, including the use of stash pads, the keeping of a low profile in dress and habit, and the use of a dollar bill to show samples to customers, and the opinion that such evidence showed an intent to distribute were inadmissible as drug profile or other irrelevant or overly prejudicial testimony. *Day*, *supra*, at 723, held that a "child battering profile" did not meet the relevancy test, "because the mere fact that a defendant fits the profile does not tend to prove that a particular defendant physically abused the victim." The admissibility of drug profile testimony is also suspect. See, e.g.,

*United States* v. *Hernandez-Cuartas*, 717 F.2d 552, 555 (11th Cir. 1983); *United States* v. *Beltran-Rios*, 878 F.2d 1208, 1210-1211 (9th Cir. 1989).

At least some of the expert evidence, however, was admissible in the judge's discretion as an aid to the jury in understanding matters beyond their common experience. In *Commonwealth* v. *Johnson*, 410 Mass. 199, 202 (1991), a case decided subsequent to *Day*, the court pointed out, "The use of narcotics investigators as experts in drug cases has an impressive history."[3] The testimony as to the use by drug dealers of samples wrapped in dollar bills was substantially similar to the evidence approved of by *Johnson*, at 202, when it cited *Commonwealth* v. *Davis*, 376 Mass. 777, 788 (1978), as allowing a "police officer to testify as to use of small manila envelopes for bagging heroin." In addition, the opinion given in the case at bar that chunk cocaine wrapped in a dollar bill in the defendant's pocket was more consistent with a dealer's sample than with personal use does not differ materially from the opinion, held admissible in *Johnson*, that the amount of cocaine possessed by the defendant in that case was not consistent with personal use but was consistent with an intent to distribute. *Id.* at 202.

We need not consider whether the more troublesome expert testimony concerning the keeping of a low profile by certain drug dealers and the expert testimony as to stash pads[4] unrelated to this defendant fall within the bar of *Commonwealth* v. *Day*. In this case the expert testimony concerning stash pads and a typical drug courier's low profile was admissible as evidence to rebut the defendant's trial strategy, which immediately became apparent in the defendant's opening. Counsel urged the jury to consider the defendant's simple life-style in light of the value of the cocaine found, i.e.,

---

[3]See also *United States* v. *White*, 890 F.2d 1012, 1014 (8th Cir.), cert. denied, 497 U.S. 1010 (1990), and *United States* v. *Cross*, 928 F.2d 1030, 1050 n.66 (11th Cir. 1991), cases asserting a distinction between criminal profile evidence and modus operandi evidence.

[4]In *United States* v. *Diaz*, 878 F. 2d 608, 618 (2d Cir.), cert. denied, 493 U.S. 993 (1989), the admission of testimony concerning the characteristics of a narcotics "stash pad" was held proper.

"hundreds of thousands of dollars." He depicted the defendant as an "immigrant from Colombia, a man who worked two jobs, sometimes fourteen hours a day, seven days a week," a man who in 1988 drove a 1981 car. Counsel stressed that the cocaine was hidden in an inaccessible area and suggested that another person, a Mr. Serna, had access to the defendant's apartment. This strategy continued throughout the trial. Through cross-examination and direct evidence the defendant elicited testimony concerning the defendant's simple living standard and his two jobs. He also brought out that Augusto Serna had rented apartment 10 at 151 Wood Street, that a search warrant had also been issued for that apartment, that Augusto Serna was a cosigner for apartment 4, and that Carlos Serna had been arrested for drugs. He also presented evidence that the cocaine would likely belong to a "high or middle high level dealer."

Thus, it was the defendant's aim to connect the two apartments to show that others had access to apartment 4, and to portray the defendant's low-key life-style as inconsistent with participation in a lucrative narcotics distribution ring. Even if the expert testimony as to stash pads and keeping a low profile were otherwise objectionable, the evidence was admissible to rebut the defendant's interpretation of the facts. See *United States* v. *Beltran-Rios*, 878 F.2d at 1211-1213 (evidence of characteristics of typical drug courier admissible where defendant "opened the door" by introducing potentially misleading testimony emphasizing the defendant's poverty). See also *United States* v. *Khan*, 787 F.2d 28, 34 (2d Cir. 1986) (evidence of price of heroin, dress of drug dealers, and transactions in Pakistan admissible to rebut defendant's argument that he was a poor man rather than a major drug dealer).

Moreover, none of the expert testimony now questioned was objected to at trial. Accordingly, the standard of review is whether the admission of the evidence creates a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). In view of the Commonwealth's powerful case against the defendant apart from the

expert testimony now challenged, there is here no such risk. Cocaine of a value of $250,000 was hidden in a broiler where the jury could infer it would have been burned unless known to the defendant. Food stains on top of the stove and a greasy pan in the oven indicated that the oven was in use. The apartment was controlled by the defendant, and no one else was shown to have keys. When the defendant came to the apartment with his keys in his hand and saw the officers, he turned around and left. He had cocaine in his shirt pocket, wrapped in a dollar bill, which looked similar to the cocaine found in the oven. See *Commonwealth* v. *James*, 30 Mass. App. Ct. 490, 495-497 (1991). Both the quantity of the cocaine found in the apartment, over 670 grams, and its quality, eighty-nine percent pure, indicate that it was intended for distribution.

3. *References to Colombian drug culture and other alleged prosecutorial errors.* In the course of qualifying Officer Taylor as an expert in drug trafficking in eastern Massachusetts, the prosecutor and Taylor, in the presence of the jury, made the references to Colombian drug trafficking and Colombian cocaine networks set out in the margin.[5] Counsel for the defendant objected, and, at a bench conference, the judge

---

[5]Q. "And, sir, have you also received a specific and intensive training with regard to Colombian drug trafficking in Merrimack Valley, sir?"

. . .

A. "I have attended courses administered by the Department of Justice, dealing with Colombian cocaine networks operating in Eastern Massachusetts, and as such, I have participated in two Federal task forces, principally dealing with investigations on those organizations."

. . .

Q. "Now, sir, in your experience as a narcotics officer, approximately how many individual Colombian drug operation — approximately how many different instances of Colombians involved in drug operations have you specifically investigated yourself?"

. . .

Q. "And . . . have you made undercover purchasers [sic] from Colombian organizations, sir?"

. . .

Prosecutor: "Your Honor, at this time, I would ask the witness be qualified as an expert in the field of Colombian trafficking in the Eastern Massachusetts area."

qualified the expert but instructed the prosecutor not to refer again to Colombia. The prosecutor complied.

There is no question that the jury knew that the defendant was Colombian. The defendant's opening statement contained this information, and defense counsel also, on occasion, asked questions using the term "Colombian."[6] The prosecutor did not refer "to race or national origin principally to inflame jurors or appeal to their racial or ethnic prejudices or fears," *Commonwealth* v. *Mahdi*, 388 Mass. 679, 693 (1983), but rather, as a bench conference indicates, considered the methods of Colombian narcotics traffickers to be unique. There was no attempt to suggest that the defendant was guilty because he was Colombian. Compare *United States* v. *Doe*, 903 F.2d 16, 20 (D.C. Cir. 1990); *Commonwealth* v. *Gallego*, 27 Mass. App. Ct. 714, 718 (1989).

The defendant also argues that the prosecutor in his closing distorted an expert's testimony by stating that the Commonwealth had not tested the small chunk of cocaine found in the defendant's shirt pocket because it was too small to be tested. The defendant objected, and the judge immediately stated that that was not the testimony.[7] During his final charge, the judge raised the issue again and reminded the jury that "there was no evidence in the case that the quantity of cocaine in that dollar bill was too small to be qualitatively tested . . . . " Any prejudice to the defendant resulting from the prosecutor's argument was cured by the judge's instruction.

4. *Ineffective assistance of counsel.* The defendant contends that his trial counsel's decision to concede possession of the cocaine found in the defendant's shirt pocket denuded

---

[6]During the cross-examination of a Lowell police officer, who did not know Spanish, counsel asked whether it would not be difficult to infiltrate a Colombian drug organization without speaking Spanish.

[7]The prosecutor proceeded by referring to the testimony of the witness that "amounts in that quantity routinely are not tested by the lab," and argued that the reason for this policy is that the quantity is too small. The defendant again objected but was overruled, the judge ruling that the prosecutor could argue the inference.

him of a defense[8] and deprived him of effective assistance of counsel. The tactical decision to admit to possession of the cocaine found in the shirt pocket was not, as the defendant contends, "tantamount to admitting possession of the larger quantity" nor was the decision "manifestly unreasonable." *Commonwealth* v. *White*, 409 Mass. 266, 273 (1991). By conceding possession of the smaller quantity, which he argued was for personal use, defense counsel avoided a credibility contest between the defendant and the arresting officers and was able to take advantage of the Commonwealth's failure to request a qualitative analysis of the substance found in the defendant's pocket, thereby undermining the argument that the substance in his pocket was part of the cocaine found in the apartment. In view of the strength of the Commonwealth's case, it was probably the most rational option available to the defendant. Cf. *Commonwealth* v. *Washington*, 15 Mass. App. Ct. 378, 386 (1983).

*Judgment affirmed.*

---

[8]To the extent that the defendant's argument concerns his conviction for possession, see note 1, *supra*, indicating that that conviction is not before us.