## Commonwealth *vs.* Pablo Berrio.

No. 96-P-1887.

Suffolk. October 29, 1997. - November 19, 1997.

Present: Brown, Laurence, & Spina, JJ.

*Practice, Criminal,* Instructions to jury, Argument by prosecutor. *Evidence,* Prima facie evidence, Presumptions and burden of proof.

At the trial of an indictment for a drug offense, the judge's instruction to the jury on the prima facie evidentiary value of the certificate of analysis of the controlled substance adequately conveyed that the jury were free to accept or reject the evidence and did not shift the burden of proof: no substantial risk of a miscarriage of justice was demonstrated. [837-838]

At a criminal trial, no substantial risk of a miscarriage of justice arose from the prosecutor's remarks in closing argument, where his statements were an accurate assessment of the evidence and where the judge forcefully and accurately instructed the jury on the nature of closing arguments and on their role in assessing the credibility of the witnesses. [838-840]

At the trial of an Hispanic defendant for a narcotics offense, there was no substantial risk of a miscarriage of justice created by an expert prosecution witness's testimony that different "groups," including Hispanics, sold drugs at different prices according to their urban or nonurban location. [840-842]

INDICTMENT found and returned in the Superior Court Department on August 7, 1989.

The case was tried before *Robert Malcolm Graham,* J.

The case was submitted on briefs.

*Paul J. Machado* for the defendant.

*Karen A. Rooney,* Assistant District Attorney, for the Commonwealth.

Brown, J. The defendant was convicted by a Superior Court jury of so much of an indictment for trafficking in cocaine in an amount more than two hundred grams, G. L. c. 94C, § 32E, as charged possession of cocaine with the intent to distribute, G. L. c. 94C, § 32A. On appeal, he alleges that (1) the trial judge's

instruction relating to prima facie evidence impermissibly shifted the burden of persuasion, (2) the prosecutor improperly vouched for the credibility of the Commonwealth's police witnesses, and (3) the testimony of a police witness created the risk that the jury's verdict was influenced by ethnic bias. We affirm.

We briefly recite the pertinent facts.[1] On the basis of a search warrant, a team of State troopers entered the second floor apartment in a four-story apartment building in Boston. When inside, the troopers discovered the defendant and one Guillermo Munera, as well as cocaine, drug packaging paraphernalia, large sums of cash, and more than $13,000 in money orders. In addition, the police found various personal papers belonging to the defendant, including a pay stub, receipts, and identity cards.

1. *Instruction on prima facie evidence.* As part of its case-in-chief, the Commonwealth introduced a certificate of analysis purporting to indicate the weight and purity of the drugs seized. In instructing the jury on its evidentiary value, the judge stated that the certificate was "prima facie evidence of the composition and the quality and the net weight of the substance." The judge then went on to explain that the term "prima facie" indicated "that the certificate is evidence in this case and it may be considered by you along with all the other evidence in this case in deciding whether or not the substance was in fact cocaine." The defendant asserts on appeal that the judge's charge impermissibly shifted the burden of proof. Since the defendant failed to object to the contested instruction our review is limited to determining whether any misstep created a substantial risk of a miscarriage of justice. See *Commonwealth v. Freeman,* 352 Mass. 556, 563-564 (1967). We conclude that no such risk is posed.

When instructing a jury on the use of so-called prima facie evidence, it is essential that the judge convey to the jury the sense that such evidence carries no particular presumption of validity. See *Commonwealth v. Claudio,* 405 Mass. 481, 485 (1989) (instruction that certificate of analysis entitled to mandatory presumption of reliability constitutes due process violation). Rather, the weight to be accorded prima facie evidence is a matter left entirely to the jury's discretion. See Liacos, Mas-

---

[1] To the extent that the defendant has challenged neither the legality of the search nor the sufficiency of the Commonwealth's evidence, we need not dwell long on the circumstances attendant to the defendant's arrest.

sachusetts Evidence § 5.8.5, at 236 (6th ed. 1994). As a result, prima facie evidence, like other evidence adduced at trial, may be disregarded whether or not contradicted by any evidence offered by the opposing party. See *Commonwealth* v. *Johnson*, 405 Mass. 488, 490 (1989) (jury may disbelieve certificate even in absence of contradictory evidence).

Here the judge's charge adequately emphasized the fact that the certificate of analysis was like any other piece of evidence in the case, to be accepted or rejected according to the judgment of the jury. There was no suggestion in the contested instruction that the certificate enjoyed any special evidentiary status. In particular, the judge at no time indicated that the assertions contained in the certificate must be accepted absent some rebuttal by the defendant. Indeed, the judge elsewhere charged the jury that "in every criminal case . . . the burden of proving guilt is on the Commonwealth. It has that burden throughout the entire trial. The defendant never has any burden to prove his innocence *or to produce any evidence . . .* (emphasis added)."

As we have often repeated, a trial judge is not constrained to use any particular language in his instructions; rather, he is required only to provide a full and accurate explanation of the governing law applicable to a particular case. See *Commonwealth* v. *Albert*, 391 Mass. 853, 857-858 (1984). See also *Commonwealth* v. *Sherry*, 386 Mass. 682, 696 (1982) (trial judge required only to present instruction that adequately conveys correct formulation of the law). This the judge accomplished. There was no error.

2. *Prosecutorial vouching.* During his closing argument, the prosecutor stated:

> "If you can't get into somebody's mind to see what they were thinking or what they intended or what they knew but you take the facts and you analyze them. Number one, is what you heard true. Not just what was said on the witness stand, the exhibits that went in, the way the witness looked when he testified to you. Did what he say make sense? Did what he say ha[ve] a ring of truth? Was there even any reason to lie? I submit to you that the credibility of the officers that testified yesterday is not in question in this case. I submit to you that there is no dispute as to the evidence that was seized pursuant to that search warrant on July 6 of '89" (emphasis added).

The defendant claims that the prosecutor's remarks concerning the "credibility of the officers" amounted to an endorsement by the prosecutor of the honesty and reliability of the police witnesses. As with the defendant's claim regarding the judge's jury charge, the defendant did not object at trial to this portion of the prosecutor's closing. Again, therefore, review is limited to the familiar standard set out in *Commonwealth v. Freeman*, 352 Mass. at 563-564.

We start with the settled proposition that assertions of personal opinion by a prosecutor as to the credibility of witnesses are prohibited. *Commonwealth v. Chavis*, 415 Mass. 703, 713 (1993). See S.J.C. Rule 3:07, Canon 7, DR 7-106(C)(4), as appearing in 382 Mass. 787 (1981). However, in considering whether, in any particular case, an improper statement of belief has been argued, a fine line separates unacceptable argument from fair comment on the evidence. See *Commonwealth v. Bradshaw*, 385 Mass. 244, 275 (1982). Here, the prosecutor did not overstep that line.

In point of fact, the defendant never challenged any of the factual assertions of the police witnesses. Rather, his defense consisted entirely of an attack on the sufficiency of the evidence linking the defendant to the apartment and, by extension, the drugs found therein. When the prosecutor stated that "the credibility of the officers that testified yesterday is not in question in this case," and "there is no dispute as to the evidence that was seized pursuant to that search warrant," he was providing an accurate assessment of the state of the evidence at the end of the defendant's trial. While the prosecutor's use of the first-person voice was unfortunate, we conclude that, in the end, there was no error. See *Commonwealth v. Howe*, 405 Mass. 332, 335-336 (1989); *Commonwealth v. Atkins*, 386 Mass. 593, 605-606 (1982) (final arguments may contain a summary both of the facts adduced at trial as well as the fair inferences that may be drawn therefrom).

It is significant to note that the defendant's trial counsel made no objection to the contested portion of the prosecutor's argument, a good indication that he too "did not consider 'the tone, manner, and substance' of the . . . statement . . . to be harmful." *Commonwealth v. Stewart*, 411 Mass. 345, 357 (1991), quoting from *Commonwealth v. Toro*, 395 Mass. 354, 360 (1985). In any event, the trial judge here forcefully and accurately charged the jury both on the nature of closing argu-

ments — specifically, the notion that questions of the credibility of witnesses are for the jury alone to resolve. Even if there were error in the prosecutor's fleeting remarks, see *Commonwealth* v. *Cunneen*, 389 Mass. 216, 223 (1983), such instructions erased any possibility for prejudice. See *Commonwealth* v. *Habarek*, 402 Mass. 105, 111 (1988).

3. *Ethnic bias.* Finally, the defendant argues that the testimony of one of the police witnesses impermissibly injected the issue of ethnic bias into the proceedings. Specifically, the defendant points to an exchange that occurred during the direct examination of State trooper Mark Marron (who had been qualified by the judge as an expert on the packaging and sales of illegal drugs):

> Q. Based upon your training and experience, sir, do you have an opinion as to range of price that just one gram of cocaine would fall under back in 1989?
>
> . . .
>
> A. The price could fluctuate anywhere from, say, $60 up to $120.
>
> Q. What are the factors that cause the price to fluctuate between $60 and up?   ·
>
> . . .
>
> A. I've found that in the city the prices tend to be a little lower. Different groups are selling their drugs. Hispanics, their prices tend to be lower. In the suburbs, the prices go up, tend to be high.

The defendant argues that since he is Hispanic, the jury might have convicted him, at least in part, on the basis of group association. As with the defendant's other claims, there was no objection at trial to the reference to "Hispanics." Again, therefore, we apply the *Freeman* standard in conducting our review.

We begin by emphasizing that the use of ethnic characterizations have no place in criminal trials. Any suggestion that a defendant, merely by virtue of his membership in a particular ethnic group, was thereby more likely to have committed the crime charged would be grossly improper and, most likely, grounds for reversal. However, this is not to say that every

reference to ethnicity automatically poses such dangers. See *Commonwealth* v. *Washington*, 28 Mass. App. Ct. 271, 273 (1990).

To illustrate this point, we compare *Commonwealth* v. *Gallego*, 27 Mass. App. Ct. 714, 717-720 (1989), with *Commonwealth* v. *Munera*, 31 Mass. App. Ct. 380, 387-388 (1991). In *Gallego*, the prosecutor emphasized the increasing public danger posed by drug crime, and singled out Colombians — the nationality of the defendant — as particularly violent elements of the illegal drug culture. Further, without any basis in the evidence, the prosecutor spoke of Colombian drug cartels, and the special menace posed by them. We concluded that such rhetoric created a grave danger of exciting biases against the defendant in the minds of the jury merely based on his nationality or ethnicity. In reversing the defendant's conviction, we summed up the prosecutor's argument thus: "[P]ropositions were tendered to the jury as facts which were not shown to be so, and these were accompanied by insinuations that tried to take advantage of ethnic or national prejudice." *Commonwealth* v. *Gallego*, 27 Mass. App. Ct. at 718.

By contrast, in *Munera*, the prosecutor made several references to the specific modus operandi of Colombian drug traffickers, as distinct from other groups involved in selling illegal drugs. After a careful review of the record, we concluded that the prosecutor in *Munera* "did not refer 'to race or national origin principally to inflame jurors or appeal to their racial biases or ethnic prejudices or fears,' . . . but rather, as a bench conference indicates, considered the methods of Colombian narcotics traffickers to be unique. There was no attempt to suggest that the defendant was guilty because he was Colombian." *Commonwealth* v. *Munera*, 31 Mass. App. Ct. at 388, quoting from *Commonwealth* v. *Mahdi*, 388 Mass. 679, 693 (1983).

The State trooper's testimony here closely resembled the contested statements in *Munera*. As in that case, the trooper's statements were not directed at suggesting that Hispanics were more likely to be engaged in the illegal drug trade, or that the defendant himself, by virtue of his ethnicity alone, was likely to be part of a criminal syndicate. Indeed, the trooper's testimony directly alluded to the fact that diverse groups were involved in illegal drug sales, not merely (or even especially) Hispanics. In this respect, the trooper's testimony was even more mild than the otherwise similar modus operandi evidence deemed permis-

sible in *Munera*. We conclude, therefore, that a consistent result is required here.

Buttressing our conclusion is the fact that, unlike the present case, the defendant in *Munera* objected to the contested ethnic references at trial, compelling a more stringent standard of review. Moreover, in both *Munera* and *Gallego* (where the defendant also lodged a timely objection), there were repeated allusions to ethnicity. Here, by contrast, there was only a single, isolated reference, further reducing the risk of prejudice. See *Commonwealth* v. *Cunneen*, 389 Mass. at 223-224 ("fleeting comments, not likely to influence, or even to seize the attention of the jury"). Compare *Commonwealth* v. *Lara*, 39 Mass. App. Ct. 546, 549-550 (1995).

One final point: we note that references to ethnic or racial identity in cases such as this are always problematic. It is at least possible that even a totally benign reference to group membership may awaken or even exacerbate latent biases among some jurors. For this reason, prosecutors would be well advised to steer their witnesses clear of making such characterizations in future cases to avoid the possibility of needless retrials. Cf. *Commonwealth* v. *Washington*, 28 Mass. App. Ct. at 275-276 (Brown J., concurring). However, in the end, we conclude that there was no reversible error here.[2]

*Judgment affirmed.*

---

[2]The defendant briefly argues that the question of the value of the cocaine seized here was not a proper subject for expert opinion. Passing the question whether the defendant's argument in this regard satisfies the requirements of Mass.R.A. P. 16(a)(4), as amended, 367 Mass. 921 (1975), we need say only that such testimony, relevant as it is to the issue of a defendant's intent to distribute, is commonplace in cases such as this. See, e.g., *Commonwealth* v. *Carmenatty*, 37 Mass. App. Ct. 908, 909-910 (1994); *Commonwealth* v. *Wooden*, 13 Mass. App. Ct. 417, 422-423 (1982).

We also note that insofar as the defendant was acquitted of trafficking, and convicted only of the far less serious offense of possession with the intent to distribute, it seems doubtful that the defendant was prejudiced by the testimony regarding the value of the drugs seized. In any event, as noted, the issue was a proper subject matter for expert opinion.