# GPT-Acton, LLC *vs.* Department of Environmental Protection.

No. 04-P-141.

Middlesex. December 8, 2004. - July 25, 2005.

Present: Cypher, Dreben, & Katzmann, JJ.

*Administrative Law,* Regulations, Agency's interpretation of regulation. *Department of Environmental Protection. Sewage Disposal. Water. Words,* "Facility."

Discussion of the Clean Waters Act, G. L. c. 21, §§ 26-53, and the regulatory scheme established by the Department of Environmental Protection for permitting water sewage discharge. [105-106]
In a declaratory judgment action brought by a landowner against the Department of Environmental Protection (department), challenging an order of the department requiring the landowner to apply for a groundwater discharge permit, the judge did not err in granting summary judgment in favor of the department, where the plaintiff failed to demonstrate that the department's interpretation of its own regulations was unreasonable. [106-108]

Civil action commenced in the Superior Court Department on May 26, 1999.

The case was heard by *Leila R. Kern,* J., on motions for summary judgment.

*Thomas O. Moriarty* for the plaintiff.

*Annapurna Balakrishna,* Assistant Attorney General, for the defendant.

Katzmann, J. In this appeal from the entry of summary judgment for the Department of Environmental Protection (DEP), GPT-Acton, LLC (GPT), claims that a judge of the Superior Court erred in deferring to DEP's interpretation of its regulations, which requires GPT to apply for a groundwater discharge permit. We affirm the judgment.

*Background.* The material facts are not in dispute. GPT is the

owner of the Spring Hill Commons apartment complex, which is located on two adjacent parcels of land in Acton. One property faces on Harris Street and contains two buildings. The other faces on Great Road and contains three buildings. The two properties are divided by a wetland area, effectively isolating the nonwetland portions from one another. Each of the five buildings is served by a separate septic system. The Harris Street systems have a combined design flow[1] of 9,240 gallons per day. The Great Road systems have a combined design flow of 8,030 gallons per day.

During October, 1997, inspections were conducted on the septic systems at Spring Hill Commons. The Harris Street systems failed to meet the criteria required under the applicable regulatory scheme, known as Title 5 of the State Environmental Code. The inspection reports indicated a backup of sewage because of clogged or overloaded septic systems. The Great Road systems required further testing to determine whether they were compliant with Title 5 because they were near a public water supply.

On June 10, 1998, GPT requested approval from DEP to upgrade the Harris Street systems, to bring them into Title 5 compliance. DEP denied this request because under its interpretation of the applicable regulations the design flow of both the Harris Street and Great Road properties must be aggregated. Thus, DEP required GPT to apply for a groundwater discharge permit under the more stringent regulations required for a larger system, and as a result, to construct a more expensive sewage system.

In 1999, DEP received notice that one of the Harris Road septic systems had broken out and that sewage was overflowing. DEP served an administrative order requiring GPT to submit a groundwater discharge permit application and a set of plans to treat the wastewater or suffer fines of $25,000 per day. GPT then brought this declaratory judgment action against DEP challenging the order as arbitrary, unreasonable, and inconsistent

---

[1]Design flow is defined as "[t]he quantity of sanitary sewage, expressed in gallons per day (gpd), for which a system must be designed in accordance with 310 [Code Mass. Regs. §] 15.203." 310 Code Mass. Regs. § 15.002 (1995).

with the plain language of the regulations. The judge granted DEP's motion for summary judgment and this appeal followed.

*The regulatory scheme.* In 1966, the Legislature enacted the Clean Waters Act, G. L. c. 21, §§ 26-53, "to enhance the quality and value of water resources and to establish a program for prevention, control, and abatement of water pollution." G. L. c. 21, § 27. To carry out its responsibilities under G. L. c. 21, § 27(6), DEP is charged with establishing a pollution discharge permit program. G. L. c. 21, § 43(2).

DEP's regulatory scheme for permitting water sewage discharge is two-tiered. Facilities that discharge lower amounts of sewage — less than 10,000 gallons per day — are typically regulated by Title 5. See 310 Code Mass. Regs. §§ 15.000 et seq. (1995).[2] Facilities that discharge higher amounts of waste usually require a groundwater discharge permit from DEP, pursuant to 314 Code Mass. Regs. §§ 5.00 et seq. (1996). GPT contends that its properties should be regulated under Title 5.[3]

Title 5 operates through local boards of health (local boards). 310 Code Mass. Regs. § 15.003 (1995). DEP regulations prescribe certain standards for siting, construction, inspection, and other requirements, and local boards employ these standards. 310 Code Mass. Regs. §§ 15.000 et seq.

The groundwater discharge permit regulations, which were promulgated in 1983, require all persons who "discharge pollut-

---

[2]Title 310 Code Mass. Regs. § 15.004(2) (1995) states in pertinent part:

"The approving authority shall not approve the construction, upgrade, or expansion of an on-site subsurface sewage disposal system unless it is: (a) a system serving or designed to receive only sanitary sewage from a facility where the total design flow generated on the facility, is less than 10,000 gallons per day . . . ."

[3]Title 314 Code Mass. Regs. § 5.05 (1997) provides:

"The following activities are exempt from the need to obtain a permit pursuant to [G. L.] c. 21, § 43 and 314 [Code Mass. Regs. §] 5.00:

"(1) (a) Any facility which discharges a liquid effluent as a result of the treatment of sewage at a treatment works which is designed to receive and receives less than 10,000 gallons per day, provided that such facility and treatment works are designed, approved, constructed and maintained in accordance with 310 [Code Mass. Regs. §§] 15.000 . . . ."

ants to ground waters of the Commonwealth" to secure a valid permit from DEP unless they have the lower flow of sewage, in which case they must comply with Title 5. 314 Code Mass. Regs. § 5.03 (1997). Thus, the regulations effectively operate to require producers of higher amounts of sewage to seek direct DEP approval and employ more stringent pollution control systems, while producers of lower amounts of sewage merely need local board approval and relatively simpler systems.

*Discussion.* The Superior Court followed the established principle that an agency's interpretation of its own regulations is entitled to deference, and that so long as the interpretation is rational and consistently applied, it should be respected. See *Boston Police Superior Officers Fedn.* v. *Boston*, 414 Mass. 458, 462 (1993); *Morin* v. *Commissioner of Pub. Welfare*, 16 Mass. App. Ct. 20, 24 (1983); *Tri-County Youth Programs, Inc.* v. *Acting Deputy Director of the Div. of Employment & Training*, 54 Mass. App. Ct. 405, 407-408 (2002). On appeal, regulations are tested in the same manner as statutes, see *Consolidated Cigar Corp.* v. *Department of Pub. Health*, 372 Mass. 844, 855 (1977), and are subject to de novo review. See *Martha's Vineyard Land Bank Commn.* v. *Board of Assessors of W. Tisbury*, 62 Mass. App. Ct. 25, 27 n.3 (2004) ("an appellate court has plenary power of de novo review of all questions of law, . . . including questions of law involving statutory construction"). Without some evidence in the record that DEP's interpretation was irrational or inconsistently applied, DEP was entitled to judgment as matter of law. See *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991); *Sullivan* v. *Brookline*, 435 Mass. 353, 356 (2001). GPT provides us with no such evidence.

The crux of the dispute rests upon the definition of the term "facility" as it is set forth in Title 5 and used in the groundwater discharge permit regulations. (The groundwater discharge permit regulations use but do not define "facility.") Title 5, 310 Code Mass. Regs. § 15.002 (1995), defines "facility" as

> "Any real property (including any abutting real property) and any buildings thereon, which is served, is proposed to be served, or could in the future be served, by a system,

where: (a) legal title is held or controlled by a single owner; or (b) the local approving authority or [DEP] otherwise determines such real property is in single ownership or control pursuant to 310 [Code Mass. Regs. §] 15.011 (aggregation)."[4]

DEP treated the entire Spring Hill Commons apartment complex as a single facility in its rejection of GPT's Title 5 permit request. Because the Harris Street property and the Great Road property each produce less than 10,000 gallons of sewage per day, they would not be subject to the groundwater discharge permit requirements but for this determination. 314 Code Mass. Regs. § 5.05(1)(a) (1997).

GPT posits two alternative theories regarding the definition of the word "facility." GPT admits that while its two properties abut one another, the two properties are not served and cannot be served by a single sewage treatment system. GPT asserts that it would not be feasible, and nearly impossible, to serve all of both properties with one system, due to the wetland area dividing them. Therefore, GPT concludes, "facility" can only apply to the Harris Street property or the Great Road property individually. GPT's interpretation is not persuasive.

The same regulation that defines "facility," 310 Code Mass. Regs. § 15.002, also defines system as "[a] system or series of systems for the treatment and disposal of sanitary sewage below the ground surface on a facility." Since "system" also means "series of systems," the presence of the wetlands and the probable need for at least two individual sewage treatment devices does not defeat DEP's conclusion that both properties can be

---

[4]Title 310 Code Mass. Regs. § 15.011 (1995) provides:

"(1) In assessing whether facilities are in single ownership for purposes of determining whether the total design flow exceeds . . . treatment and effluent standard requirements of 314 [Code Mass. Regs. §] 5.00 or 314 [Code Mass. Regs. §] 6.00, the approving authority, with the advice and assistance of [DEP], shall consider

" . . .

"(d) whether facilities asserted to be in separate ownership or control are treated as a single facility by the owners thereof."

considered a single facility.[5] DEP's interpretation is not only reasonable, but is supported by explicit regulatory definitions. See *Felix A. Marino Co.* v. *Commissioner of Labor & Ind.*, 426 Mass. 458, 461 (1998); *Howard Johnson Co.* v. *Alcoholic Beverages Control Commn.*, 24 Mass. App. Ct. 487, 490-491 (1987).

GPT's alternative argument relies on an early DEP administrative law judge's decision. See *In the Matter of Martha's Vineyard Camp Meeting Assn.*, 4 DEP Rep. 28 (1997). That decision, however, used an old version of Title 5 regulations that did not define "facility." See 310 Code Mass. Regs. § 15.02 (1986). See also *Post* v. *Commissioner of Dept. of Envtl. Quality Engr.*, 403 Mass. 29, 34 (1988).

Title 5 regulations specifically state that they are to be read together with the groundwater discharge permit regulations. 310 Code Mass. Regs. § 15.001(3) (1996) ("The provisions of 310 [Code Mass. Regs. §§] 15.000 should be read together with 314 [Code Mass. Regs. §§] 5.00 and 6.00 which are applicable to all discharges to ground of sanitary sewage"). The two sets of regulations are designed to work in tandem, as two tiers of a comprehensive regulatory scheme.

*Conclusion.* Neither of GPT's arguments concerning the definition of "facility" is convincing. One is completely undermined by the definition of "system" in 310 Code Mass. Regs. § 15.002, and the other argument ignores the mandate of 310 Code Mass. Regs. § 15.001(3) to read both sets of regulations together. Consequently, GPT fails to demonstrate that DEP's interpretation of its regulations is unreasonable. We therefore affirm the entry of summary judgment for the defendant.

The judgment dated December 8, 2003, is to be modified by adding a declaration that GPT does not qualify for an exemption under 314 Code Mass. Regs. § 5.05. As so modified, the judgment is affirmed.

*So ordered.*

---

[5]GPT argues that DEP did not raise an argument concerning the definition of "system" at the Superior Court, and thus, that we should not consider the argument. The primary focus of this case from the start, however, has been interpretation of these regulations. The issue having been raised, we may address arguments about the propriety of the Superior Court's findings using all the tools of statutory interpretation. See *Augat, Inc.* v. *Liberty Mut. Ins., Co.*, 410 Mass. at 120 ("We may consider any ground supporting the judgment.")