## COMMONWEALTH *vs.* B & M FITZGERALD BUILDERS, INC., & another.[1]

No. 07-P-158.

Suffolk. February 6, 2008. - March 31, 2008.

Present: KANTROWITZ, SMITH, & GRAHAM, JJ.

*Massachusetts Clean Waters Act. Practice, Civil,* Instructions to jury. *Judgment,* Preclusive effect. *Department of Environmental Protection. Administrative Law,* Agency's interpretation of statute.

In a civil action in Superior Court alleging, inter alia, that the defendants violated Title 5 of the State Environmental Code, 310 Code Mass. Regs. §§ 15.000 et seq., by failing to connect effectively the distribution box and the leaching field of a certain septic system, the judge's instructions to the jury regarding the standard of compliance for septic systems, which paraphrased the highly technical regulatory language, ensured that the jury would not be misled and would apply the correct law as adequately explained to them in lay terms. [488-490]

This court declined to address an issue, raised for the first time on appeal, regarding the preclusive effect of the judgment in a civil action. [491]

In a civil action brought in Superior Court by the Attorney General, on behalf of the Department of Environmental Protection, alleging, inter alia, that the defendants had violated the Clean Waters Act, G. L. c. 21, §§ 42-43 (Act), the judge erred in granting a directed verdict in favor of the defendants, where the Commonwealth presented a prima facie case that the defendants violated the Act by discharging effluent directly into the ground, by failing to obtain a proper permit for that activity, and by failing to qualify for the exemption by violating the compliance requirements of Title 5 of the State Environmental Code, 310 Code Mass. Regs. §§ 15.000 et seq. [491-492]

CIVIL ACTION commenced in the Superior Court Department on July 30, 2002.

The case was tried before *Ralph D. Gants,* J.

*William J. Pudlo* for the defendants.

*I. Andrew Goldberg,* Assistant Attorney General, for the Commonwealth of Massachusetts.

---

[1]Brian J. Fitzgerald.

GRAHAM, J. The Attorney General, on behalf of the Department of Environmental Protection (DEP), brought an action against B & M Fitzgerald Builders, Inc., and Brian Fitzgerald (collectively, defendants) for several violations of Title 5 of the State Environmental Code, 310 Code Mass. Regs. §§ 15.000 et seq.; a single violation of the Massachusetts Clean Waters Act, G. L. c. 21, §§ 42-43; and a single violation of the Massachusetts Consumer Protection Act, G. L. c. 93A. At the close of the evidence, the judge granted the defendants' motion for a directed verdict on the Clean Waters Act claim. The jury returned a special verdict in favor of the Commonwealth on its c. 93A claim and one of its Title 5 claims.[2] Thereafter, the judge entered judgment on the verdict, with an order assessing damages to the homeowners, Constance and Joseph Kelley (collectively, Kelleys), on whose behalf the Commonwealth sought restitution, in addition to an award of civil penalties and attorney's fees to the Commonwealth.

The defendants appeal, claiming that the judge erred in charging the jury by adding the word "effective" to the language of the environmental regulations. The defendants also raise, for the first time on appeal, the question of the preclusive effect the judgment may have on claims brought by a third party in subsequent litigation. The Commonwealth cross-appeals, claiming that the judge erred in dismissing its claim for violation of the Clean Waters Act.

*Background.* The jury could have found the following facts. In March, 2001, Brian Fitzgerald accepted an offer from the Kelleys to purchase his property located at Morningside Drive in Westfield. The offer was contingent upon the on-site septic system passing the required Title 5 inspection.

Fitzgerald arranged for Robert Donahue to inspect the septic system. On April 27, 2001, Donahue conducted the first inspection, but failed to locate the distribution box, the component of the septic system that conveys effluent to the leach field. Fitzgerald installed a new distribution box. However, he failed to con-

---

[2]The jury found in favor of the Commonwealth on its claim that Brian Fitzgerald violated 310 Code Mass. Regs. § 15.240 (1995) by failing to comply with Title 5 design requirements. The jury found in favor of the defendants on the remaining Title 5 claims.

nect the pipes leading from the distribution box to the leach field and instead cut the pipes and placed them directly into the ground.[3] Fitzgerald then backfilled the area.

On May 1, 2001, Donahue conducted a second inspection of the system. Donahue observed the new distribution box, but was not able to observe whether the pipes connected to the leach field because the pipes leading from the box were covered with soil. However, Fitzgerald assured Donahue that the pipes were connected to the leach field. Donahue testified that, "[Fitzgerald] said that his excavator, Tony Liquory, made the connection with the couplers, and I asked for him to call Tony Liquory and ask him about that. . . . He made the call from his cell phone and he spoke for a short period of time about it. When I asked [*sic*] him that I'd like to speak to Tony, he rather abruptly terminated the phone call and told me he was busy." Donahue passed the system and issued a Title 5 certification.

Shortly after the Kelleys closed in early May, 2001, they hired Edward Gallis to examine the septic system. Gallis notified the Kelleys that there were problems with the system. The board of health was notified, and it advised the Kelleys that the septic system was not Title 5 compliant, and that it posed a danger to their health and safety. The Kelleys thereafter purchased and installed a new system.

*Discussion.* 1. *Jury instructions.* In his jury instructions and in the special verdict slip, the judge added the word "effectively" to the language of the provisions of 310 Code Mass. Regs. § 15.240 (1995)[4] to describe the connection that the code re-

---

[3]Fitzgerald testified that he connected the new pipes from the distribution box to the existing pipes leading to the leach field by placing the two ends together so that they abutted, but without securing them with a clamp. However, Barry Searle, deputy director of the Westfield health department, testified that when he excavated and inspected the system, he found no such connection, but rather three lines leading from the distribution box, all of which were cut and terminated directly in the natural ground.

[4]The State Environmental Code describes the requirements for a functional soil absorption system as follows: "Soil absorption systems shall be designed as an integral part of the system. Septic tank effluent is to be distributed throughout the soil absorption system by means of effluent distribution lines so that the effluent can migrate through the underlying soil column under unsaturated flow conditions. All soil absorption systems shall achieve the following objectives of the soil treatment process: (a) maximum stabilization of

quires for compliance.[5] The defendants claim that this additional term heightened the burden required for compliance and resulted in prejudice to them. We disagree.

"It is the duty of the judge presiding over a jury trial to give full, fair, correct and clear instructions as to the principles of law governing all the essential issues presented, so that the jury may understand their duty and be enabled to perform it intelligently." *Fein* v. *Kahan*, 36 Mass. App. Ct. 967, 967-968 (1994), quoting from *Buckley* v. *Frankel*, 262 Mass. 13, 15 (1928). "The trial judge maintains discretion in charging the jury, and a charge is to be read as a whole in determining whether the jury were properly instructed." *Sarvis* v. *Boston Safe Deposit & Trust Co.*, 47 Mass. App. Ct. 86, 100 (1999). "A trial judge is not constrained to put his instructions into any particular words; 'rather, he is required only to provide a full and accurate explanation of the governing law applicable to a particular case.' " *Commonwealth* v. *Caramanica*, 49 Mass. App. Ct. 376, 378 (2000), quoting from *Commonwealth* v. *Berrio*, 43 Mass. App. Ct. 836, 838 (1997). See *Mishara Constr. Co.* v. *Transit-Mixed Concrete Corp.*, 365 Mass. 122, 125 (1974). "We review objections to jury instructions to determine if there was any error, and, if so, whether the error affected the substantial rights of the objecting party." *Hopkins* v. *Medeiros*, 48 Mass. App. Ct. 600, 611 (2000).

Contrary to the defendants' assertion, the judge was not

---

organic wastes in the effluent; (b) removal of pathogenic organisms, nutrients, and particulates; (c) recharge of the ground-water table with adequately treated effluent with minimal attendant pollution of the groundwater; and (d) disposal of the effluent without discharge to the ground surface or the creation of any nuisance." 310 Code Mass. Regs. § 15.240(3).

[5]The judge, in pertinent part, instructed the jury: "[T]he issue here is . . . whether [Fitzgerald] effectively connected that distribution box through effluent distribution lines to a leaching field, such that any sewage from the home would flow from the septic tank into the D-box and from there through distribution lines to a leaching field to be absored in the soil. . . . In view of the evidence, that means that . . . [i]f you find that you credit [Fitzgerald's] testimony that he [connected the D-box to the effluent distribution lines], whether that was an effective connection to any effluent distribution lines such that the effluent would then flow into the septic tank then into the distribution box and through those effluent distribution lines to the leaching field." The special verdict slip reads on count IV (violation of 310 Code Mass. Regs. § 15.240) as follows: "Did Brian Fitzgerald install a distribution box (or cause it to be installed) but fail effectively to connect that distribution box through effluent distribution lines to a soil absorption system?"

constrained by the language of the regulation provided his instructions explained the law in a "full, fair, correct and clear" manner. *Fein* v. *Kahan, supra*. Whereas the regulatory language was highly technical, the judge's paraphrasing of the requirements for compliance under 310 Code Mass. Regs. § 15.240 adequately explained in lay terms the principles of law governing soil absorption systems design. The addition of the word "effectively" in describing the nature of the connection between the distribution box and the leaching field obviated the need for the list of the technical functional requirements provided in the regulation.

When the inspector checked the distribution box lines he "found there were three pipes going out of that D-box and they were all cut and just going into the natural ground. There [were] no other pipes there, there was no connection, in fact one of them had a stone about the size of a softball s[h]oved into the end of it." Fitzgerald, during his direct testimony, indicated that he merely abutted, without securing, the distribution box lines to the preexisting pipes and assumed that the pipes went to a leach field.

The judge's instructions ensured that the jury would not be misled and would apply the correct law. We reject the defendants' arguments that the addition of the term "effectively" heightened the standard for compliance. While the regulations do not specify how the absorption system should be designed, they clearly require that the soil absorption system be functional. Implicit in the requirement that the effluent "be distributed throughout the soil absorption system by means of effluent distribution lines so that the effluent can migrate through the underlying soil column," 310 Code Mass. Regs. § 15.240(3), and in the various listed objectives of the soil treatment process, *ibid.*, is the requirement that the method of distribution through the soil column be "effective." As the judge responded to defense counsel's objection to the charge, "it would be somewhat silly to argue that you comply with Title [5] if you simply physically connect two things . . . merely connecting two pipes together so that they appear close. Even if they at some point touch, I don't think [that] is what Title [5] understood to be a sufficient connection between the D-box and the soil absorption system. So the jury will have to evaluate whether it is an effective connection." There was no error of law or abuse of discretion.

2. *Preclusive effect of judgment.* The defendants, for the first time on appeal, raise the question of what, if any, preclusive effect the judgment in this case may have with respect to certain claims that the Kelleys have asserted against the defendants in subsequent litigation. We decline to entertain the defendants' arguments, as they were not raised in the underlying proceedings. See *Carey* v. *New England Organ Bank,* 446 Mass. 270, 285 (2006) (issue not raised or argued below may be deemed waived).

3. *Clean Waters Act violation.* The judge directed a verdict against the Commonwealth on its Clean Waters Act claim.[6] In so doing, the judge interpreted the Clean Waters Act as requiring the Commonwealth to show that discharges from the septic system were likely to reach groundwater, and reasoned that the Commonwealth failed to meet its burden. The Commonwealth claims that the judge's interpretation requiring such a showing constituted reversible error. We agree.

The construction of statutes and regulations poses a question of law that we review de novo. *GPT-Acton, LLC* v. *Department of Envtl. Protection,* 64 Mass. App. Ct. 103, 106 (2005). "When construing a statute, we look first and foremost to the language of the statute as a whole." *In the Matter of a Grand Jury Subpoena,* 447 Mass. 88, 90 (2006). "[A] statute must be interpreted 'according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the

---

[6]The Clean Waters Act provides in relevant part: "No person shall discharge pollutants into waters of the commonwealth nor construct, install, modify, operate or maintain an outlet for such discharge or any treatment works, without a currently valid permit issued by the director. No person shall engage in any other activity that may reasonably be expected to result, directly or indirectly, in discharge of pollutants into waters of the commonwealth, nor construct, effect, maintain, modify or use any sewer extension or connection, without a currently valid permit issued by the director [of the DEP], unless exempted by regulation of the director." G. L. c. 21, § 43(2), inserted by St. 1973, c. 546, § 9. The regulations provide for an exemption from the permit requirements under G. L. c. 21, § 43(2), for smaller facilities (i.e., those that are designed to receive, and do receive, less than 10,000 gallons per day), "provided that such facility and treatment works are designed, approved, constructed and maintained in accordance with [Title 5]." 314 Code Mass. Regs. § 5.05(1)(a) (1997). Section 42 of the Clean Waters Act provides that: "Any person who . . . violates any provision of this chapter [or] any valid regulation . . . issued by [the DEP]. . . shall be subject to a civil penalty . . . which may be assessed in an action brought on behalf of the commonwealth." G. L. c. 21, § 42, inserted by St. 1973, c. 546, § 8.

language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.' " *Commonwealth* v. *Connor C.*, 432 Mass. 635, 640 (2000), quoting from *Champagne* v. *Champagne*, 429 Mass. 324, 326 (1999). "It is well recognized that the duty of statutory interpretation is for the courts, but where an agency's interpretation of a statute within its charge is reasonable, the court should not substitute its own interpretation." *Lynch* v. *Commonwealth*, 54 Mass. App. Ct. 347, 348 (2002).

To implement the Clean Waters Act, the DEP issued regulations providing that "[a]ny facility which discharges a liquid effluent onto or below the land surface," 314 Code Mass. Regs. § 5.03(2)(a) (1997), is engaged in an "[a]ctivit[y] which constitute[s] discharges of pollutants requiring a permit under 314 [Code Mass. Regs. §] 5.03(1) [1997]." 314 Code Mass. Regs. § 5.03(2) (1997). This regulation reflects the DEP's judgment that discharge of sewage directly on or into the ground is sufficiently likely to cause groundwater contamination. In contrast to the judge's reading, which requires the Commonwealth to satisfy an additional burden to prove noncompliance, the agency's interpretation furthers the goals of the Clean Waters Act "to enhance the quality and value of water resources and to establish a program for prevention, control, and abatement of water pollution." G. L. c. 21, § 27, inserted by St. 1966, c. 685, § 1. The agency's interpretation is reasonable and should control. In view of the fact that the Commonwealth presented a prima facie case that the defendants violated the Clean Waters Act, G. L. c. 21, § 43(2), by discharging effluent directly into the ground, failing to obtain a proper permit, and failing to qualify for the exemption by violating the Title 5 compliance requirements, the judge erred in granting a directed verdict in favor of the defendants on this claim.

Accordingly, we reverse the order allowing the defendants' motion for a directed verdict on count V (G. L. c. 21, §§ 42-43) and remand the case for further proceedings consistent with this opinion. The judgment is otherwise affirmed.

*So ordered.*