COMMONWEALTH *vs.* DENNIS P. STEELE.

Suffolk. September 9, 2009. - October 16, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Evidence,* Intoxication, Blood alcohol test, Breathalyzer test. *Intoxication. Administrative Law,* Regulations. *Regulation.*

Discussion of the statutory and regulatory framework regarding the use of breathalyzer test results as evidence in prosecutions for operating a motor vehicle while under the influence of alcohol. [210-212]

A District Court judge did not err or commit an abuse of discretion in concluding that in a prosecution for operating a motor vehicle while under the influence of alcohol, the Commonwealth could introduce evidence only of the lower of two breath sample results, where the applicable regulation, 501 Code Mass. Regs. § 2.57, reasonably related to the controlling statute and did not conflict with it. [212-214]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on October 23, 2008.

The case was reported by *Greaney,* J.

*Cynthia M. Pepyne,* Assistant District Attorney, for the Commonwealth.

*Barry Auskern* for the defendant.

IRELAND, J. The defendant is charged with operating a motor vehicle while under the influence of intoxicating liquor (OUI) in violation of G. L. c. 90, § 24 (1) (*a*) (1), and operating a motor vehicle with a suspended license, subsequent offense, in violation of G. L. c. 90, § 23. The charges arose from his arrest on February 29, 2008, after which he consented to a breathalyzer test. The results, as automatically generated by the breathalyzer machine and reported on an "implied consent report form," showed a breath sample having a blood alcohol level of .09 per cent at 4:14 A.M.; a calibration standard analysis of .15 per cent at 4:15 A.M.[1]; and a breath sample having a blood alcohol level

---

[1] A calibration standard analysis is "an analysis consisting of an instrument

Commonwealth *v.* Steele.

of .10 per cent at 4:18 A.M. In a written decision on a motion in
limine filed by the Commonwealth, a District Court judge
concluded that, in accordance with statutory and regulatory
requirements, the Commonwealth in its prosecution of the OUI
offense could only introduce evidence of the lower of the two
breath sample results (or, stated another way, only the lower
blood alcohol level result and not, as the Commonwealth wanted,
both blood alcohol level results).[2] The Commonwealth sought
relief from this ruling pursuant to G. L. c. 211, § 3, and a single
justice of the county court reserved and reported the case to the
full court without decision.[3] We agree with the District Court
judge and remand the case to the county court for entry of a
judgment affirming his decision.

1. *Statutory and regulatory framework.* "[A]n OUI violation
may be established on proof that a driver was operating a motor
vehicle either 'with a percentage, by weight, of alcohol in [his]
blood of eight one-hundredths or greater' (per se violation), or
'while under the influence of intoxicating liquor' (impaired abil-
ity violation)." *Commonwealth* v. *Colturi,* 448 Mass. 809, 810
(2007). See G. L. c. 90, § 24 (1) (*a*) (1). A driver operating on
"any way or in any place to which the public has right to access
. . . shall be deemed to have consented to a chemical test or
analysis of his breath [breathalyzer test] . . . in the event that he
is arrested for operating a motor vehicle while under the influ-
ence of intoxicating liquor." G. L. c. 90, § 24 (1) (*f*) (1). "Such

---

simulating deep lung air containing a certified alcohol standard." 501 Code
Mass. Regs. § 2.09 (2006). As explained by counsel during oral argument, it
is used to ensure that the breathalyzer machine is working properly.

[2] The District Court judge indicated that only the actual numerical result
could be admitted and not the "implied consent report form" on which the
result and other information appears. The judge suggested that if the Com-
monwealth, in future prosecutions, seeks to introduce the form without redac-
tions, then it should seek to have the form amended to remove other informa-
tion appearing thereon. As the Commonwealth's motion in limine pertained
only to the admissibility of the numerical results of the breathalyzer test, we
do not address the admissibility of the remaining content appearing on the
implied consent report form.

[3] The defendant no longer challenges our jurisdiction to entertain the Com-
monwealth's petition. Although we are not required to exercise our extraordinary
superintendence powers under G. L. c. 211, § 3, we find it appropriate to do
so in this case. See *Villalta* v. *Commonwealth,* 428 Mass. 429, 431-433 (1998),
and cases cited. See also *Commonwealth* v. *Colturi,* 448 Mass. 809, 810
(2007).

test shall be administered at the direction of a police officer . . . ." *Id.* "If the person arrested refuses to submit to [a breathalyzer test], after having been informed that his license or permit to operate motor vehicles . . . shall be suspended for a period of at least 180 days and up to a lifetime loss, for such refusal, no [breathalyzer test] shall be made and he shall have his license or right to operate suspended in accordance with this paragraph for a period of 180 days . . . ."[4] *Id.*

In a prosecution of an OUI charge, "evidence of the percentage, by weight, of alcohol in the defendant's blood at the time of the alleged offense, as shown by chemical test or analysis . . . of his breath, shall be admissible and deemed relevant to the determination of the question of whether such defendant was at such time under the influence of intoxicating liquor."[5] G. L. c. 90, § 24 (1) (*e*). For breathalyzer test results to be "valid," the Legislature has imposed several requirements. See G. L. c. 90, § 24K. Among these requirements is that the breathalyzer test be conducted by a "certified operator, using infrared breath-testing devices according to methods approved by the secretary of public safety [Secretary]." *Id.* In addition, the Secretary is obligated to "promulgate rules and regulations regarding satisfactory methods, techniques and criteria for the conduct of such tests," *id.*, and to "prescribe a uniform form [the implied consent report form, see 501 Code Mass. Regs. § 2.09 (2006)] for reports of such chemical analysis to be used by law enforcement officers." G. L. c. 90, § 24K. The regulations "shall include" that the breath testing procedure have the following sequence: "(1) one adequate breath sample analysis; (2) one calibration standard analysis [see note 1, *supra*]; [and] (3) a second adequate breath sample analysis." *Id.*

Under the regulations promulgated by the Secretary, "[a] breath test shall be valid and admissible . . . if it consists of

[4]"Evidence that the defendant failed or refused to consent to [a breathalyzer test] shall not be admissible against him in a civil or criminal proceeding . . . ." G. L. c. 90, § 24 (1) (*e*). See *Opinion of the Justices*, 412 Mass. 1201, 1211 (1992).

[5]Evidence of a blood alcohol level of .05 per cent or less gives rise to "a permissible inference that such defendant was not under the influence of intoxicating liquor." G. L. c. 90, § 24 (1) (*e*). Where there is evidence of a blood alcohol level of more than .05 per cent but less than .08 per cent, "there shall be no permissible inference." *Id.*

(a) a multipart procedure in which two adequate breath samples agree within +/- 0.02 blood alcohol content units,[6] and (b) the calibration standard analysis reads 0.14%, 0.15%, or 0.16%." 501 Code Mass. Regs. § 2.56(6) (2006). The regulations also provide: "If the two adequate breath samples, expressed in the two decimal mode, differ within +/- 0.02 blood alcohol content units, *the lower of the two adequate breath samples shall be taken as the individual under arrest's blood alcohol level"* (emphasis added).[7] 501 Code Mass. Regs. § 2.57 (2006).

2. *Breath sample results.* We reject the Commonwealth's argument that the judge's decision amounts to an error of law and an abuse of discretion. The Commonwealth suggests that the decision cannot stand because the Secretary, as opposed to the Legislature, imposed the requirement that, when the two breath samples differ "within +/- 0.02 blood alcohol content units," the lower of the two samples shall be taken as a defendant's blood alcohol level. 501 Code Mass. Regs. § 2.57. The validity of a regulation will be sustained, however, so long as it reasonably relates to, and does not conflict with, the controlling statute. See *Ciampi* v. *Commissioner of Correction,* 452 Mass. 162, 175 (2008); *Consolidated Cigar Corp.* v. *Department of Pub. Health,* 372 Mass. 844, 855 (1977). Here, the Commonwealth ignores that the Legislature has expressly authorized, indeed charged, the Secretary with promulgating rules and regulations "regarding satisfactory methods, techniques and criteria for the conduct of [breathalyzer] tests." G. L. c. 90, § 24K. Although the Legislature, to some extent, circumscribed the authority it conferred on the Secretary by requiring that the regulations include certain matters, such as a particular sequence for the testing

---

[6]A "[b]lood [a]lcohol [c]ontent [u]nit" is defined as "the unit of measurement used by a certified breath testing instrument to measure the presence by weight of alcohol per volume of blood." 501 Code Mass. Regs. § 2.09 (2006).

[7]The regulations provide: "All breath test sample and calibration sample results shall be recorded in the two decimal mode. Any third or subsequent decimal place is to be truncated prior to the comparison of the results." 501 Code Mass. Regs. § 2.56(5) (2006). "Truncating, as opposed to rounding, involves simply reporting the first and second decimal places and dropping the third. For example, by truncating, a reading of 0.079 [per cent blood alcohol content] would be reported as 0.07 and a reading of 0.089 [per cent blood alcohol content] would be reported as 0.08. The effect of truncating, as opposed to rounding, is to under-report the concentration, to the benefit of the arrestee." *State* v. *Chun,* 194 N.J. 54, 83, cert. denied, 129 S. Ct. 158 (2008).

procedure (a calibration standard analysis in between two ade-
quate breath samples), the Legislature was silent on the issue of
the significance of different results from the two adequate breath
samples. Where the controlling statute expressly requires two
breath samples, it is reasonable for the Secretary to anticipate
different results and to account for such an occurrence. This
type of regulation, in our view, is necessarily implicated by
"the conduct of such tests." G. L. c. 90, § 24K. Thus, where
the regulation reasonably relates to, and does not conflict with
the statute, the Secretary's regulation amounts to a permissible
exercise of his authority.

The Commonwealth contends that the Secretary's decision to
designate the lower of the two adequate breath samples as a
defendant's blood alcohol level benefits a defendant. While this
observation may be accurate, it does not invalidate the appli-
cable regulation. The Secretary was charged with accounting for
a situation where a defendant's two adequate breath samples
differed. The regulation reasonably does so. By reconciling the
two different readings to the benefit of a defendant, the Secretary
avoids a claim that the higher reading is unreliable (as contrasted
with the lower reading). The imposition of the applicable margin,
within .02 per cent, see 501 Code Mass. Regs. § 2.57, can be
said to safeguard further the reliability of the process. If the re-
sults fall outside this margin, the test is altogether invalid.

We are unpersuaded by the Commonwealth's claim that the
higher breath sample result is probative evidence that corrobo-
rates a defendant's designated blood alcohol level and, therefore,
must always be admissible. The imposition of a two-part
procedure to obtain a defendant's blood alcohol level essentially
pertains to the validity of the breathalyzer test and does not
speak of evidentiary value. The Secretary could have determined
that permitting evidence of both adequate breath sample results
in every OUI prosecution[8] would unnecessarily confuse a jury
on a technical matter not within their common knowledge. To

---

[8]We do not address a situation where a defendant presents expert testimony
suggesting that his blood alcohol level had risen from the time he operated a
motor vehicle to the time the breathalyzer test was administered, and seeks to
bolster that defense with the results of both adequate breath samples. While
there may exist cases that are soundly left to the discretion of the trial judge,
this case is not such a case. The Commonwealth makes clear that, in this case,

the extent that the two breath samples yield disparate, and not marginal, results, the breathalyzer test, by virtue of the Secretary's imposition of the requirement that the two samples be within a margin of .02 per cent, see 501 Code Mass. Regs. § 2.56(6)(a), will not be valid. To otherwise permit introduction of a marginally higher breath sample result only invites jurors to do what the regulatory framework prohibits, namely, to infer, or conclude, that the lower breath sample result is not accurate and that the defendant's blood alcohol level has been underreported. We add that *Commonwealth* v. *Kelley*, 39 Mass. App. Ct. 448, 448-449 (1995), does not aid the Commonwealth, as that case was decided under a different statutory and regulatory scheme corresponding to the date of the offense in that case, September 25, 1988.

3. *Conclusion.* The case is remanded to the county court for the entry of a judgment affirming the judge's decision denying the Commonwealth's motion in limine.

*So ordered.*

---

it sought to admit both breath sample results in order to have the higher number corroborate the lower number. Corroboration was the sole ground for relevancy.