## COMMONWEALTH *vs.* PAURIC HOURICAN.

No. 13-P-212.

Suffolk. January 6, 2014. - June 4, 2014.

Present: GREEN, SIKORA, & CARHART, JJ.

*Motor Vehicle,* Operating under the influence. *Evidence,* Breathalyzer test. *Practice, Criminal,* Motion to suppress. *Regulation.*

Discussion of the standard of review applicable to the interpretation of a regulation. [410-411]

Discussion of the history of regulations relating to the recording of breath sample and calibration sample results. [411-412]

A Boston Municipal Court judge erred in denying the criminal defendant's motion to suppress evidence of a postarrest breathalyzer test employing a gas calibration standard that resulted in breath test results differing by 0.022 per cent blood alcohol content units, where 501 Code Mass. Regs. § 2.14(4) (2010), which mandates that a new breath test sequence shall begin where the administration of a prescribed sequence does not result in breath samples that are within 0.02 per cent blood alcohol content units, is ambiguous, in that the differential in the defendant's test results were not within the range permitted by the regulation, and nothing in the regulations directly supported truncation of the third decimal place of a differential between breath samples obtained from a breath testing instrument employing a gas calibration standard; and where practical considerations of purpose and fairness supported the reversal of the denial of the motion to suppress. [412-417]

COMPLAINT received and sworn to in the Central Division of the Boston Municipal Court Department on April 20, 2012.

A pretrial motion to suppress evidence was heard by *Annette Forde,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Robert J. Cordy,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Brian J. Lenfest* for the defendant.

*John P. Zanini,* Assistant District Attorney, for the Commonwealth.

SIKORA, J. On April 20, 2012, a complaint issued from the Boston Municipal Court charging the defendant, Pauric Hourican, with operating a motor vehicle while under the influence of alcohol (OUI) in violation of G. L. c. 90, § 24(1)(*a*)(1). Before trial, the defendant moved to suppress evidence of a postarrest breathalyzer test. A Boston Municipal Court judge denied the motion, and a single justice of the Supreme Judicial Court allowed the defendant's application for leave to pursue an interlocutory appeal. See Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996). For the following reasons, we reverse.

*Factual background.*[1] At approximately 2:45 A.M. on April 20, 2012, Officer David Mammone of the Boston police department heard a "loud bang" and turned to see that the defendant had driven his black pickup truck into a police patrol wagon. The officer observed that the defendant had "glassy eyes" and smelled of alcohol. After he failed two of three field sobriety tests, police placed him under arrest. The ensuing voluntary breathalyzer test produced two breath samples measuring .121 and .143 percent blood alcohol content by weight (a difference of .022). The breath testing instrument was the Alcotest 9510; it employed a gas calibration standard. A result of .08 percent, if credited by the factfinder, establishes guilt of OUI. G. L. c. 90, § 24(1)(*a*)(1), first par.

*Motion to suppress.* Before trial, the defendant moved to suppress evidence of the breathalyzer test. He argued that the test was invalid because .022 percent blood alcohol content units separated his two breath samples. Title 501 Code Mass. Regs. § 2.14(4) (2010) provides that, if the administration of a prescribed sequence "does not result in breath samples that are within +/- 0.02% blood alcohol content units, a new breath test sequence *shall* begin"[2] (emphasis added). The judge denied the

---

[1] The judge denied the defendant's motion in a ruling from the bench. We summarize the facts alleged in the application for complaint. See *Eagle-Tribune Publishing Co.* v. *Clerk-Magistrate of the Lawrence Div. of the Dist. Ct. Dept.*, 448 Mass. 647, 649 n.5 (2007) (an application for complaint "is a request for a formal written charge against an individual who has already been arrested"). As explained *infra*, the dispositive issue on appeal presents a question of law.

[2] The full text of 501 Code Mass. Regs. § 2.14(4) (2010) provides:

"If the sequence described in 501 [Code Mass. Regs. §] 2.14(3) does

defendant's motion in a ruling from the bench. She reasoned that the regulation required rounding the differential of .022 percent to .02 percent because it "simply says 0.02. It doesn't take it out to the third decimal point." She explained, "If [the differential] were [for example] 0.026, then I'd say we have an issue here because we can round it off to 0.03. But you're 0.022."

*Discussion.* 1. *Standard of review.* The interpretation of a regulation is a question of law which we review de novo. See *Commonwealth* v. *B & M Fitzgerald Builders, Inc.*, 71 Mass. App. Ct. 486, 491 (2008), citing *GPT-Acton, LLC* v. *Department of Envtl. Protection*, 64 Mass. App. Ct. 103, 106 (2005). See also *Corsetti* v. *Stone Co.*, 396 Mass. 1, 12 (1985). "We interpret a regulation in the same manner as a statute, and according to traditional rules of construction." *Warcewicz* v. *Department of Envtl. Protection*, 410 Mass. 548, 550 (1991). "When the language of a regulation is 'plain it must be given its ordinary meaning, and the language used constitutes the principal source of insight into regulatory purpose.'" *Young* v. *Patukonis*, 24 Mass. App. Ct. 907, 908 (1987), quoting from *Morin* v. *Commissioner of Pub. Welfare*, 16 Mass. App. Ct. 20, 24 (1983). See *Mullally* v. *Waste Mgmt. of Mass., Inc.*, 452 Mass. 526, 535-536 (2008). "Where reasonably possible, no portion of the language of a regulation should be treated as surplusage." *Warcewicz* v. *Department of Envtl. Protection*, 410 Mass. at 551, quoting from *Bottomley* v. *Division of Administrative Law Appeals*, 22 Mass. App. Ct. 652, 657 (1986). "Language in a regulation, like language in a statute, must be considered in

---

not result in breath samples that are within +/- .02% blood alcohol content units, a new breath test sequence shall begin."

Section 2.14(3) of 501 Code Mass. Regs. (2010) provides that a breathalyzer test

"shall consist of a multipart sequence consisting of:

"(a) one adequate breath sample analysis;

"(b) one calibration standard analysis; and

"(c) a second adequate breath sample analysis."

The test here complied with that sequence. A new test would have repeated the same sequence.

light of the other words surrounding it, and its scope and meaning must be determined by reference to context." *Knapp Shoes, Inc.* v. *Sylvania Shoe Mfg. Corp.*, 418 Mass. 737, 744 (1994) (quotation, citations, and brackets omitted). These canons are advisory, not mandatory; we do not apply them mechanically or dogmatically; and we inspect the results of their application for rationality and practicality. See *Commonwealth* v. *Buccella*, 434 Mass. 473, 481 (2001) (refusing to interpret a regulation in a manner that "would be utterly absurd and . . . clearly not what the [authoring agency] intended").

2. *Evolution of the regulations.* The Legislature has charged the Secretary of the Executive Office of Public Safety and Security (Secretary) "with promulgating rules and regulations 'regarding satisfactory methods, techniques and criteria for the conduct of breathalyzer tests.' " *Commonwealth* v. *Steele*, 455 Mass. 209, 212 (2009) (brackets omitted), quoting from G. L. c. 90, § 24K.[3] For a breathalyzer test result to be valid and admissible in evidence, the Commonwealth must demonstrate compliance with those regulations that "go to the accuracy of the [breath testing] device or manner in which the [breathalyzer] test was performed." *Commonwealth* v. *Kelley*, 39 Mass. App. Ct. 448, 453 (1995). See *Commonwealth* v. *Barbeau*, 411 Mass. 782, 786 (1992); *Commonwealth* v. *Zeininger*, 459 Mass. 775, 778-780 (2011).

In 2006, the Secretary promulgated regulations requiring that "[a]ll breath sample and calibration sample results shall be recorded in the two decimal mode. Any third or subsequent decimal place is to be truncated prior to the comparison of the results." 501 Code Mass. Regs. § 2.56(5) (2006). The regulations provided further that, "[u]pon completion of a valid test, the test results shall be made available to the individual under arrest. If the two adequate breath samples, expressed in the two decimal mode, differ within +/- 0.02 blood alcohol content units, the lower of the two adequate breath samples shall be taken as the individual under arrest's blood alcohol level." 501 Code Mass. Regs. § 2.57 (2006).

---

[3]The name of the Executive Office of Public Safety changed to the Executive Office of Public Safety and Security in 2007. This change has no bearing on the issue before us. See *Flomenbaum* v. *Commonwealth*, 451 Mass. 740, 745 n.6 (2008).

In 2010, the Secretary promulgated new regulations "to accommodate advancements/improvements in applicable technology." See 1155 Mass. Reg. 78 (April 30, 2010); 501 Code Mass. Regs. §§ 2.00 et seq. (2010). Those regulations, which' govern here, no longer require the recording of all breath samples in the "two decimal mode." Instead, "[t]he results of the analysis of each breath sample and calibration standard shall be reported to at least two decimal places if the test was administered using a liquid calibration standard. The results of the analysis of each breath sample and calibration standard shall be reported *in three decimal places*, if the calibration standard is gas [as here]" (emphasis supplied). 501 Code Mass. Regs. § 2.15(1) (2010).

Despite this change, the 2010 regulations still provide that, if administration of a prescribed breath test sequence "does not result in breath samples that are within +/- 0.02% blood alcohol content units, a new breath test sequence shall begin." 501 Code Mass. Regs. § 2.14(4) (2010). The regulations also retain the requirement that "the lower of the two breath sample results shall be truncated to two decimal places and reported as the arrestee's [percentage of blood alcohol content by weight]." 501 Code Mass. Regs. § 2.15(2)(b) (2010).

3. *Interpretation of 501 Code Mass. Regs. § 2.14(4) (2010).* The decisive issue on appeal is the correct interpretation of 501 Code Mass. Regs. § 2.14(4) (2010). The defendant argues that the regulation establishes that a breathalyzer test is invalid unless breath samples agree within *.020* percent. See 501 Code Mass. Regs. § 2.13(4) (2010) (a "breath test shall be valid and the results admissible in a court of law if it complies with 501 [Code Mass. Regs. §] 2.14"). The Commonwealth, by contrast, argues that the regulation requires truncation to two decimal places of any differential between breath samples. Truncation means a cutoff of the measurement at two decimal places without regard to the value of any number in the third decimal place. It differs from the colloquial meaning of "rounding off" the second decimal place downward or upward by consideration of the third decimal place number.[4] Thus, according to the Com-

---

[4]See *Commonwealth* v. *Steele*, 455 Mass. at 212 n.7, quoting from *State* v.

monwealth, the regulation would permit a differential of up to .029 percent to be truncated to .02 percent.

Each rationale has some support. On the one hand, .02 percent and .020 percent are mathematically equivalent. Accordingly, the defendant's contention that any percentage above .020 is not "within .02%" has force. In addition, the theory of truncation advanced by the Commonwealth would appear to render meaningless the requirement that "the results of the analysis of each breath sample and calibration standard shall be reported in three decimal places, if the calibration standard is gas." 501 Code Mass. Regs. § 2.15(1) (2010). See *Bottomley* v. *Division of Administrative Law Appeals*, 22 Mass. App. Ct. at 657 ("Where reasonably possible, no portion of the language of a regulation should be treated as surplusage"). Further, the Commonwealth's view fails to acknowledge that the 2010 promulgation omits any requirement of truncation to two decimal places for comparison of the two predicate readings. Finally, as noted by the defendant, the record contains the "Breath Test Report Form" reporting his test results. It reads, "Test Results: Test Not Completed: TESTS OUTSIDE TOL[ERANCE]." The training manual for the Alcotest 9510 provides: "If first two [breath] samples DO NOT agree within +/- 0.02% 'TEST OUTSIDE +/- TOL' will appear on display briefly." See Jones & Geraghty, Drunk Driving Defense App. B-2, at 795 (2013-2014 ed.).[5]

On the other hand, the Commonwealth correctly observes, as did the motion judge, that the "plain text" of 501 Code Mass. Regs. § 2.14(4) (2010) "allows for only two decimal places."

---

*Chun*, 194 N.J. 54, 83, cert. denied, 555 U.S. 825 (2008) ("Truncating, as opposed to rounding, involves simply reporting the first and second decimal places and dropping the third. For example, by truncating, a reading of 0.079 [per cent blood alcohol content] would be reported as 0.07 and a reading of 0.089 [per cent blood alcohol content] would be reported as 0.08. The effect of truncating, as opposed to rounding, is to under-report the concentration, to the benefit of the arrestee").

[5]The office of alcohol testing (OAT) is responsible for "creating and maintaining the Breath Test Operator's Manual," 501 Code Mass. Regs. § 2.04(f) (2010); the OAT resides "within the Massachusetts Department of State Police Crime Laboratory," 501 Code Mass. Regs. § 2.03 (2010); and the department of State police is a department within the Executive Office of Public Safety and Security, see G. L. c. 6A, § 18; *Harvard Crimson, Inc.* v. *President & Fellows of Harvard College*, 445 Mass. 745, 755 (2006).

The Commonwealth points out that, if the Secretary had "intended to [impose] the level of precision that the defendant claims is required under the regulation, [she] would have expanded the permissible range of disparity [between breath samples] to include three decimal places, that is, no greater disparity than .020%."[6] Also, the Secretary left in place the requirement that, for the purpose of determining an arrestee's percentage of blood alcohol content, "the lower of the two breath sample results shall be truncated to two decimal places." 501 Code Mass. Regs. § 2.15(2)(b) (2010). Retention of that two-digit standard suggests that the Secretary has determined that any differential between breath samples may be truncated to two decimal places as a tolerable approximation.[7]

---

[6]Nevertheless, the Commonwealth's reliance on the principle of construction that the "expression of one thing is an implied exclusion of other things omitted," *Harborview Residents' Comm., Inc.* v. *Quincy Hous. Authy.*, 368 Mass. 425, 432 (1975), is misplaced. Because .02 percent and .020 percent express the same percentage, we cannot say that the former implies the exclusion of the latter.

[7]An agency's interpretation of its own regulation is entitled to "considerable deference." *Warcewicz* v. *Department of Envtl. Protection*, 410 Mass. at 550. For that purpose, we consider several factors, including (i) the agency's participation in the drafting of the regulation; (ii) the duration of the agency's position as to its interpretation, especially whether that position arose contemporaneously with the promulgation of the regulation; and (iii) the consistency of the agency's view over time. *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 515-516 (1975). See *Beverly Port Marina, Inc.* v. *Commissioner of the Dept. of Envtl. Protection*, 84 Mass. App. Ct. 612, 621 (2013), quoting from *United States Gypsum Co.* v. *Executive Office of Envtl. Affairs*, 69 Mass. App. Ct. 243, 249 n.16 (2007) ("judicial deference 'may be tempered' when . . . the agency interpretation at issue is not one of long-standing or consistent application"); *Morin* v. *Commissioner of Pub. Welfare*, 16 Mass. App. Ct. at 24 ("the record discloses that [the agency] did not consistently interpret the applicable regulation . . . and its interpretation in this case is, therefore, entitled to no weight"). In all cases, the policy of judicial deference will not decline to a practice of judicial abdication. *Warcewicz, supra.* See, e.g., *Civetti* v. *Commissioner of Pub. Welfare*, 392 Mass. 474, 485-488 (1984) (rejecting department's interpretation of own regulation).

Here, the district attorney for the Suffolk district represents the Commonwealth in its prosecution of the defendant. The Secretary is not a party and the district attorney does not purport to represent her. Thus, although we may assume that the district attorney and Secretary favor strict enforcement of the law, we do not have an agency's interpretation of its own regulation. Rather, the Secretary, as the author of the 2006 and 2010 regulations and as the head of the parent organization of the OAT, which authored the Breath

On balance, we conclude that 501 Code Mass. Regs. § 2.14(4) (2010) is ambiguous and that we must reverse the denial of the defendant's motion to suppress. See *Falmouth* v. *Civil Serv. Commn.*, 447 Mass. 814, 818 (2006), quoting from *AT&T* v. *Automatic Sprinkler Appeals Bd.*, 52 Mass. App. Ct. 11, 14 (2001) (language "capable of being understood by reasonably well-informed persons in two or more different senses" is ambiguous). Our primary reasoning is literal. The differential in the defendant's test results, .022, is not "within +/- 0.02% blood alcohol content units," as required by 501 Code Mass. Regs. § 2.14(4) (2010). Nothing in the regulations or record pertaining to testing procedures and comparison of results to determine their validity directly supports truncation of the third decimal place of a differential between breath samples obtained from a breath testing instrument employing a gas calibration standard. Standards which "touch upon criminal acts" demand greater precision than those which "do not define or relate to criminal conduct." *Caswell* v. *Licensing Commn. for Brockton*, 387 Mass. 864, 873 (1983). A regulation "penal in character" should be unambiguous. See *Druzik* v. *Board of Health of Haverhill*, 324 Mass. 129, 134 (1949) (regulation "penal in character . . . should be so clearly expressed that those who may be subject thereto should not have to guess at its meaning"); *Aristocratic Restaurant of Mass., Inc.* v. *Alcoholic Bevs. Control Commn. (No. 1)*, 374 Mass. 547, 552-553, appeal dismissed, 439 U.S. 803 (1978); *Grocery Mfrs. of Am., Inc.* v. *Department of Pub. Health*, 379 Mass. 70, 83 (1979) (assuming, without deciding, "that a regulation whose violation is a criminal act is tested by a higher standard of definiteness than a noncriminal regulation").

Definiteness will assist not only the person subject to a regulation, but also the officials charged with its enforcement. Here, adherence to a plainly termed regulation and to the monitor warning against the validity of the first test sequence as beyond the permitted differential would have led the technician to conduct a second test sequence. In short, a duty of clarity rests upon an agency authoring a regulation defining criminal conduct

Test Operator's Manual, has generated an ambiguity, and not a clarity to which we can defer.

or defining a standard of proof of that conduct. The present regulations do not satisfy that duty.[8]

Beyond this literal ground, practical considerations of purpose and fairness support the same outcome. First, the .022 differential between the two measurements, each well above the .08 threshold, does not cause an illogical result, as suggested by the Commonwealth at oral argument: i.e., an election between two breathalyzer results substantially across the actionable .08 threshold. Rather, the differential determines the underlying reliability of the instrumentation and process creating all test results. An excessive differential casts doubt upon the reliability of all the readings. See *Commonwealth* v. *Steele*, 455 Mass. at 213 ("[I]mposition of the applicable margin, within .02 percent, see 501 Code Mass. Regs. § 2.57 [2006], can be said to safeguard further the reliability of the process. If the results fall outside this margin, the test is altogether invalid") (interpreting former regulation).

Second, we must be concerned with the gravity of a measure

---

[8]We do not reach that conclusion by precise application of the rule of lenity. As to that rule, see *United States* v. *Lanier*, 520 U.S. 259, 266 (1997) ("the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered"); *Commonwealth* v. *Zubiel*, 456 Mass. 27, 33 (2010) (same). Compare *Commonwealth* v. *Paccia*, 338 Mass. 4, 6 (1958); *Commonwealth* v. *George*, 406 Mass. 635, 637-640 (1990) (both construing the statute punishing the operation of a motor vehicle while under the influence of intoxicating liquor strictly against the Commonwealth).

The regulation at issue here does not define criminal conduct, and the defendant does not argue that he lacked fair warning of the elements of operating while under the influence. See, e.g., *Matter of a Grand Jury Subpoena*, 447 Mass. 88, 91 n.2 (2006) ("The statute before us confers a testimonial privilege; it does not define criminal conduct. The rule of lenity does not apply").

Nonetheless, the government retains the duty of clear definition of standards of criminal responsibility for separate important purposes. Enforcement officers require unambiguous guidance. The public at large should understand the criteria for criminal liability. And the government as creator of those standards should define them with trustworthy competence. "Although it is not likely that a criminal will carefully consider the text of the law before he murders or steals, it is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear." *McBoyle* v. *United States*, 283 U.S. 25, 27 (1931) (Holmes, J.).

that, if admitted in evidence, will be a powerful determinant of guilt or innocence. The law provides the prosecution with two modes of proof of the OUI offense. It may offer evidence of impaired operation by the testimony of percipient witnesses. Concomitantly or independently, it may offer into evidence a properly qualified breathalyzer reading of .08 or higher. If the factfinder accepts the reading, it establishes per se the crime. See *Commonwealth* v. *Colturi*, 448 Mass. 809, 815-818 (2007); *Commonwealth* v. *Hubert*, 71 Mass. App. Ct. 661, 662 n.2 (2008), *S.C.*, 453 Mass. 1009 (2009). The reading therefore requires the assurance of accuracy.

Third, strict enforcement of the limited differential does not operate unfairly or impractically against the prosecution of OUI charges. Independently of the breathalyzer results, the Commonwealth here and in typical cases can pursue proof of impaired operation by police testimony about the accused's driving performance, appearance, demeanor, execution of field sobriety tests, and conduct at booking. See *Commonwealth* v. *Colturi*, *supra* at 811, 817. The requirement of precise standards and reliable breathalyzer readings does not deprive the Commonwealth of a sole source of evidence.

Finally, the Secretary has the ready ability to cure the present ambiguity by a remedial amendment of the regulation to define the permissible differential between two breathalyzer readings reported to the third decimal place. That improvement would demonstrate the competence of the government as the guardian of public safety and as the author of clear standards of criminal liability for violation of the public safety.

*Conclusion.* We therefore reverse the order denying the motion to suppress.

*So ordered.*