IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| JOHN J. SPENCER JR., | No. 57223-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| STATE OF WASHINGTON DEPARTMENT OF LICENSING, | |
| Petitioner. | |

PRICE, J. — After John J. Spencer was arrested for driving under the influence of alcohol (DUI), the Department of Licensing suspended his personal driver's license (PDL) and disqualified his commercial driver's license (CDL). At his hearing challenging the Department's licensing actions, Spencer argued that the DUI breath test results were inadmissible. The hearing examiner disagreed and sustained the Department's licensing actions.

The superior court reversed. The superior court decided that the breath test results were inadmissible and, also, that a defect in a notice related to the disqualification of Spencer's CDL required reversal of the Department's actions.

The Department moved for discretionary review, arguing not only that Spencer's breath test results were admissible, but also that the superior court improperly reversed the hearing examiner's decision revoking Spencer's PDL based on a defect in the notice related to the CDL. We affirm the hearing examiner's decision sustaining the Department's suspension of Spencer's PDL.

FACTS

I. BACKGROUND

In July 2021, Trooper Schuster of the Washington State Patrol stopped Spencer for driving over the speed limit. Trooper Schuster observed that Spencer had a strong odor of intoxicants coming from his breath, watery eyes, and slow speech. Spencer was arrested for DUI.

Spencer was transported to a police department and given the implied consent warnings related to the breath test. After receiving the warnings, Spencer consented to taking a breath test. The test was conducted on a Dräger Alcotest 9510 testing instrument. The Dräger instrument printed a ticket with four breath test results: 0.156, 0.165, 0.157, 0.166. The results were approximately twice the legal limit of 0.08. *See* RCW 46.61.502(1)(a).

On August 3, the Department sent Spencer two notices. One notice informed Spencer that the Department would suspend his "driving privilege" for 90 days for driving under the influence of alcohol. Clerk's Papers (CP) at 220. The other notice stated that the Department would disqualify Spencer's CDL for one year because of his "*conviction* of being in physical control of a motor vehicle under the influence of alcohol and/or drugs." CP at 235 (emphasis added). (The CDL notice was incorrect because Spencer had not been convicted.) Spencer requested a DUI hearing to challenge the Department's licensing actions as provided for in the notices.

II. THE DEPARTMENT'S ADMINISTRATIVE HEARING

The Department supported the suspension of Spencer's PDL with Trooper Schuster's police report documenting Spencer's DUI arrest and breath test, as well as an affidavit from the state toxicologist. The state toxicologist's affidavit stated that the Dräger instrument was an approved breath test instrument. The affidavit further stated, "All approved breath test instruments

calculate whether the breath test results are within plus or minus 10% of their mean in accord with WAC 448-16-060. If a breath sample is outside this parameter, no breath test result is generated." CP at 234.

The state toxicologist's affidavit turned out to be partially false. At the time, former WAC 448-16-060 (2010) provided, in relevant part, that "[f]or the Dr[ä]ger instrument, the mean of all four results will be calculated and rounded to four decimal places." Former WAC 448-16-060(2) (2010).[1] However, undisputed evidence showed that the Dräger instrument was programmed to truncate the mean rather than round it.[2] Thus, the method the Dräger instrument used to calculate the acceptable range of the breath test results failed to meet the requirements of the WAC.

Spencer challenged the admissibility of the breath test results based on the Dräger instrument's programming deficiency.[3] Spencer pointed out that the admissibility of test results is governed by RCW 46.61.506, which, in turn, requires that all test results fall within the

---

[1] In 2022, WAC 448-16-060(2) was updated to state, "For the Drager instrument, the mean of all four results will be calculated and truncated to four decimal places."

[2] "Rounding to four decimal places requires adjusting the fourth decimal up or down depending on the value of the fifth decimal place. Truncating to four decimal places requires cutting off the mean at four decimal places 'without regard to the value of any number' in the fifth decimal place." *State v. Keller*, 2 Wn.3d 887, 897 n.6, 545 P.3d 790 (2024) (quoting CP at 56 (FF.5.31 & N.119) (quoting *Commonwealth v. Hourican*, 85 Mass. App. Ct. 408, 412 (2014)).

[3] Spencer also argued that his arrest was unlawful. The hearing examiner rejected this argument.

acceptable range as calculated with the "method" approved by the state toxicologist (meaning, WAC 448-16-060).[4] In other words, because the Dräger instrument's programming did not calculate the acceptable range using the method identified in the WAC, it was not properly approved by the state toxicologist, and any results were inadmissible at Spencer's suspension hearing.

The hearing examiner rejected Spencer's argument, explaining that it appeared the actual results complied with the statutory requirements:

---

[4] RCW 46.61.506(4)(a) provides,

> A breath test performed by any instrument approved by the state toxicologist shall be admissible at trial or in an administrative proceeding if the prosecution or department produces prima facie evidence of the following:
>
> (i) The person who performed the test was authorized to perform such test by the state toxicologist;
>
> (ii) The person being tested did not vomit or have anything to eat, drink, or smoke for at least fifteen minutes prior to administration of the test;
>
> (iii) The person being tested did not have any foreign substances, not to include dental work or piercings, fixed or removable, in his or her mouth at the beginning of the fifteen-minute observation period;
>
> (iv) Prior to the start of the test, the temperature of any liquid simulator solution utilized as an external standard, as measured by a thermometer approved by the state toxicologist was thirty-four degrees centigrade plus or minus 0.3 degrees centigrade;
>
> (v) The internal standard test resulted in the message "verified";
>
> (vi) The two breath samples agree to within plus or minus ten percent of their mean to be *determined by the method approved by the state toxicologist*;
>
> (vii) The result of the test of the liquid simulator solution external standard or dry gas external standard result did lie between .072 to .088 inclusive; and
>
> (viii) All blank tests gave results of .000.

(Emphasis added.)

> [T]he mean of the two tests clearly fell within the scope of the statutory language mandating the plus or minus 10 [percent] range. If the breath test readings were to fall outside the required 10 [percent] of their mean, the instrument would not even print out a ticket. . . . Here a test ticket was printed out. This fact, and the information printed on the face of the ticket, preponderates that the test measurements fell within the required 10 [percent] mean. The fact that the mathematical method used to obtain the mean of the two tests was inconsistent between the approved instrument and the approved code is essentially a minor technical violation at most.

CP at 53-54.

The hearing officer sustained the Department's action suspending or revoking Spencer's driver's license and driving privileges.

III.  SUPERIOR COURT PROCEEDINGS

Spencer appealed the hearing officer's order to the superior court. Spencer repeated his argument that the breath test results were inadmissible. Spencer also added a new argument that the Department's CDL disqualification notice deprived him of due process because it identified the incorrect basis for disqualifying his CDL, specifically that the notice incorrectly stated that the Department would disqualify his CDL because of a "conviction" when, in fact, no conviction had occurred.

The superior court reversed the hearing examiner's decision on two grounds. First, the superior court found that Spencer's breath test results were inadmissible because the Dräger instrument did not follow the state toxicologist's approved methodology when calculating the mean. Second, the superior court agreed with Spencer that the Department's CDL disqualification notice violated due process because it identified the incorrect basis for disqualifying Spencer's CDL.

The Department moved for reconsideration, requesting that the superior court clarify that the ruling that the CDL notice violated due process applied only to the disqualification of Spencer's CDL and not to the suspension of Spencer's PDL. The superior court denied the Department's motion.

## IV. THE DEPARTMENT'S MOTION FOR DISCRETIONARY REVIEW

The Department moved for discretionary review of two issues. First, the Department argued that the admissibility of the breath test results should be reviewed as an issue involving public interest. Second, the Department argued that the "superior court departed from the accepted and usual course of judicial proceedings under RAP 2.3(d)(4) when it reversed Spencer's personal driver's license suspension based on an alleged defect with his CDL disqualification notice." Dep't's Mot. for Discretionary Review and Mot. to Certify Case to the Wash. Supreme Ct. (Dep't's MDR) at 24 (capitalization omitted). A commissioner of this court granted discretionary review of both issues.

## ANALYSIS

## I. ADMISSIBILITY OF BREATH TEST RESULTS

The Department first argues that the hearing examiner properly ruled that Spencer's breath test results were admissible. We disagree, but the error was harmless.

" 'We review an administrative decision such as a license revocation from the same position as the superior court.' " *Martin v. Dep't of Licensing*, 175 Wn. App. 9, 18, 306 P.3d 969 (2013) (quoting *Clement v. Dep't of Licensing*, 109 Wn. App. 371, 374, 35 P.3d 1171 (2001)). "Thus, '[w]e review the administrative order to determine whether the Department committed any

6

errors of law, and we uphold findings of fact supported by substantial evidence.' " *Id.* (alteration in original) (quoting *Lynch v. Dep't of Licensing*, 163 Wn. App. 697, 705, 262 P.3d 65 (2011)).

The foundational requirements for admissibility of breath tests are governed by RCW 46.61.506(4). At a trial or administrative proceeding, a breath test "shall be admissible" if the Department "produces prima facie evidence of" eight testing requirements, including that the driver's "two breath samples agree to *within plus or minus ten percent of their mean* to be determined by the method approved by the state toxicologist[.]" RCW 46.61.506(4)(vi) (emphasis added).

The state-toxicologist approved method for determining whether two breath samples agree to within plus or minus 10 percent of their mean is found in WAC 448-16-060. At the time of Spencer's test, the second step of the approved method for the Dräger instrument called for the mean of all four breath test results to be calculated and rounded to *four* decimal places. Former WAC 448-16-060(2). The state toxicologist's approved method for determining whether two breath samples agree to within plus or minus 10 percent of their mean, in effect at the time of Spencer's arrest, provided that the Dräger instrument would calculate the mean by rounding to four decimal places. Former WAC 448-16-060(2).

(1) The breath test results will be reported, truncated to three decimal places.

(2) For the DataMaster instruments, the mean of the two breath test results will be calculated and rounded to four decimal places. *For the Drager instrument, the mean of all four results will be calculated and rounded to four decimal places.*

(3) The lower acceptable limit will be determined by multiplying the above mean by 0.9, and truncating to three decimal places.

(4) The upper acceptable limit will be determined by multiplying the mean by 1.1 and truncating to three decimal places.

(5) If the individual results fall within and inclusive of the upper and lower acceptable limits, the two breath samples are valid.

Former WAC 448-16-060 (emphasis added).

Here, it is undisputed that the Dräger instrument was programmed to truncate the calculated mean of the breath test results, rather than round as was required by the method approved by the state toxicologist in effect at the time. However, neither the statute nor the regulation requires the Dräger test instrument to perform the mean or acceptable range calculation at the time of the test. *State v. Keller*, 2 Wn.3d 887, 913-15, 545 P.3d 790 (2024). The inconsistency between the Dräger software and the WAC does not automatically render the breath test results inadmissible. *Keller*, 2 Wn.3d at 916-18. Instead, as recently explained by our Supreme Court, if the evidence shows that the breath test results fall within the acceptable range, the breath tests are admissible, regardless of whether that calculation is done at the time of the testing:

> [T]here is no logical reason why the machine would have to compute that number at the time of the test. . . . Math can be performed—and produce the same results— later. If the undisputedly accurate breath test results fall within plus or minus 10 percent of their rounded mean according to the formula in former WAC 448-16-060, they will always fall within that range regardless of by whom or when that calculation is done.

*Keller*, 2 Wn.3d at 920 (internal quotation marks omitted).

To the extent that the hearing officer dismissed the discrepancy between the Dräger software and the WAC as a "minor technical violation" and relied on the instrument printout to establish that the results fell within the required range, this was error. CP at 54. The Dräger instrument did not perform the calculations based on the method approved by the state toxicologist, and neither the hearing examiner nor anyone else verified that the results fell within the acceptable range to be admissible. However, this error is harmless because the test results do fall within the acceptable range and, therefore, should have been admitted.

A nonconstitutional error "requires reversal only if there is a reasonable probability that the error materially affected the outcome of the trial." *State v. Kindell*, 181 Wn. App. 844, 853-54, 326 P.3d 876 (2014). Here, the math demonstrates that the results of Spencer's breath tests fall within the acceptable range using the method approved by the state toxicologist. The mean of the four results is 0.161: $(0.156 + 0.165 + 0.157 + 0.166)/4 = 0.161$.[5] The low end of the acceptable range is 0.144: $0.161 \times 0.9 = 0.1449$; the high end of the range is 0.177: $0.161 \times 1.1 = 0.1771$. All of Spencer's breath test results fall within the range of 0.144 and 0.177. The math demonstrates that the breath test results met the requirements of RCW 46.61.506(4)(a)(vi). Because these results would have been the same if the hearing examiner had independently determined whether the results fell within the acceptable range, or if the Department had engaged an expert to submit a declaration performing the calculations, the breath test results would have been admitted. The hearing examiner could have properly considered the breath test results, even if the hearing examiner's reason for doing so was erroneous.[6] Accordingly, there is no reasonable probability that the hearing examiner's error affected the outcome of the proceeding.

---

[5] We note that the mean in this case is only three decimal places long which does not require either rounding or truncating, and, therefore, the error in the Dräger software is arguably immaterial. However, the hearing examiner did not know this at the time they made their determination.

[6] Spencer argues the *Keller* should be read as requiring the math to be performed at the time of the hearing in order to establish the breath test results are admissible. To the extent that Spencer argues the hearing examiner erred by admitting the test results without the math having been done at the hearing, we agree. As explained above, the hearing examiner did not properly establish the requirements for admissibility before considering the breath test results. However, because *Keller* did not address harmlessness, it does not preclude our application of the nonconstitutional error standard in light of the mathematical fact that the results met the standards for admissibility.

The superior court erred by concluding that Spencer's breath test results were inadmissible. We affirm the hearing examiner's decision based on Spencer's breath test results.

II.  CDL DISQUALIFICATION NOTICE

In its motion for discretionary review, the Department limited the issue on review specifically to whether the superior court erred by reversing the hearing examiner's entire decision (involving both Spencer's PDL and CDL) based on a defect in the CDL notice:

> The superior court found the notice regarding the suspension of Spencer's CDL to be defective.  However, in its ruling, the court reversed the entire DOL decision, seemingly applying the CDL notice ruling to Spencer's personal driver's license as well.  And upon the Department's motion for reconsideration, the court refused to amend that part of the ruling to apply only to Spencer's CDL.  That was a departure from the usual course of judicial proceedings, calling for the Court's review under RAP 2.3(d)(4).

Dep't's MDR at 24 (citations omitted).  This court granted discretionary review on this precise issue—whether the CDL notice defect should have affected the *entirety* of the hearing examiner's decision—not whether the notice defect somehow invalidated the CDL disqualification.

We agree with the Department that the superior court erred by reversing the hearing examiner's entire decision, which suspended all Spencer's driving privileges—both his PDL and CDL, based on a defect only in the CDL disqualification notice.  We see no persuasive reason why a defect in the CDL notice would affect the validity of the proceeding related to Spencer's PDL. Thus, we reverse the superior court's ruling in so far as the superior court relied on the defect in the CDL notice to reverse the hearing examiner's order suspending Spencer's PDL.  Because the

No. 57223-1-II

Department's petition for discretionary review was limited this narrow issue, we do not otherwise address the superior court's CDL ruling.[7]

CONCLUSION

The superior court erred by reversing the hearing examiner's decision based on the admissibility of the breath test results and by reversing the hearing examiner's decision suspending Spencer's PDL based on a defect in the notice related to Spencer's CDL. We affirm the hearing examiner's decision suspending Spencer's PDL.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
PRICE, J.

I concur:

_____
MAXA, J.

---

[7] Since granting discretionary review, the parties have raised numerous additional issues related to the superior court's consideration of the CDL notice, including whether Spencer waived the issue and whether the notice even violated due process. This court did not grant discretionary review of any of these issues, and therefore, we do not consider them.

No. 57223-1-II

Veljacic, A.C.J. (Dissent) — I would affirm the superior court in its reversal of the suspension because the foundational requirements for admission of the breath test results were not met. I would remand for further proceedings. I need not reach the notice issue. Accordingly, I respectfully dissent.

_____
VELJACIC, A.C.J.